THE STATE EX REL. WEBER, Respondent, vs. BOARD OF TRUS-
TEES OF THE POLICEMEN'S PENSION FUND, Appellant.

*October 2—October 20, 1903.*

*Policemen's pension fund: Retirement for disability: Conditions
precedent: Examination and finding: Waiver: Mandamus.*

> Sec. 8, ch. 265, Laws of 1899, provides that if any policeman shall
> be injured while on duty and shall be "found, upon an ex-
> amination by a medical officer ordered by said board [of trus-
> tees of policemen's pension fund], to be . . . permanently
> disabled by reason of service in such department," such board
> shall retire him from service, and upon such retirement shall
> order payment of a pension to him; but no such retirement
> shall occur unless the disability was contracted in the active
> service of the department. In a proceeding by *mandamus* to
> compel the board to order payment of a pension, it is *held*
> that the examination and finding of permanent disability by
> reason of service in the department are conditions precedent
> to the retirement, and that the provisions of the statute, being
> express limitations upon the power of the board, could not be
> waived by it, even though permanent disability of the relator
> be conceded.

APPEAL from an order of the superior court of Milwaukee
county: J. C. LUDWIG, Judge. *Reversed.*

This is an appeal from an order refusing to quash an alter-
native writ of *mandamus.* It appears from the relation, in
effect, that the relator was a married man, forty-four years of
age; that he entered the service of the city of Milwaukee as
a patrolman January 2, 1890, and continued in such employ-
ment until injured, May 27, 1901. His salary was $80 per
month, out of which, after June, 1899, $2 per month was de-
ducted and placed in the policemen's pension fund, pursuant
to ch. 265, Laws of 1899. He remained on the pay roll until
May 1, 1902. May 27, 1901, at 6:42 p. m., he rang in his
time, and reported "off duty" for the day, from a patrol box
within his beat. The time for him to go off duty for the day

State ex rel. Weber v. Trustees of Policemen's Pension Fund, 119 Wis. 436.

was 6:45 p. m., but a leeway of five minutes either way was allowed by the department. Just after ringing up his time a street car passed him, going in the direction of his home, having a sign thereon, "No passengers," but was required by the ordinance granting the street railway its franchise to carry policemen in uniform free of charge. It was the custom of the operators of the car in question to "slow up" for policemen in uniform, but it is not claimed that the car in question "slowed up" for the relator. The relator was in uniform, and, for the purpose of getting home, attempted to board the moving car at the front platform. In doing so he tripped and fell, and his left leg was run over and crushed so as to necessitate amputation four inches above the ankle. This injury permanently disabled the relator, so as to render necessary his retirement from the service of the police department.

On June 17, 1902, the relator made application to the defendant board for a pension, under ch. 265, Laws of 1899, and filed his claim therefor on that day; and on January 12, 1903, the board denied the pension, making written findings of fact substantially as above set forth, and reciting that, on a motion to allow the pension, three of the board voted in the affirmative, and three in the negative—"three of the board were of the opinion that, as a matter of law, the petitioner was entitled to a pension as patrolman under the law, and therefore voted to give him a pension, and three others were of the opinion that, as a matter of law under the foregoing facts, the petitioner was not entitled to a pension, and voted against the granting of the pension for that reason, and therefore the petition of the petitioner for a pension was denied" by reason of such tie vote.

The car which the relator so attempted to board traveled four blocks from the place of the accident before getting beyond the limits of the relator's beat, beyond which the relator had to ride about a mile and a half to get home, if he

went as far as he could on the car.   Various rules and ordinances are quoted in the relation, which are to the effect that a patrolman shall hold himself in readiness at all times to answer the calls and obey the orders of his superior officers. He must reside in the city, and must not leave it without permission, except on his vacation, and he must then leave his address.   He must devote his whole time and attention to the business of the department, and may not engage in any other calling, and, "although certain hours are allotted to the respective members for the performance of duty on ordinary occasions, yet at all times, when notified, he must be prepared to act immediately."   He shall not wear citizen's clothes without permission.   He may serve criminal process, and civil process when the city is not a party, and possess the powers of a constable at common law.   He is required to arrest all persons found violating any law or ordinance, or found under suspicious circumstances, and if he neglects to perform any duty required of him shall forfeit a penalty of not exceeding $100.

Upon such relation the defendant moved the court to quash the alternative writ of *mandamus* issued February 3, 1903, and to dismiss the order to show cause therein made by the court on that day, and to dismiss the petition upon which the writ was issued, and all proceedings therein, with costs, upon the grounds (1) that it appeared upon the face of the petition that the court had no jurisdiction to grant the relief prayed for therein; (2) that the petition and the alternative writ of *mandamus* do not, and neither of them does, upon its face, state facts sufficient to entitle the relator to the peremptory writ of *mandamus* as prayed, or to any relief. Upon the hearing of such motion, the court, on April 4, 1903, ordered that such motion of the defendant to quash be, and the same was thereby, overruled and denied, with leave to serve and file a return on payment of costs, etc.   From the

order so refusing to quash the alternative writ of *mandamus,* the defendant appeals.

For the appellant there was a brief by *Hoyt, Doe, Umbreit & Olwell,* and oral argument by *J. B. Doe.*

*John Toohey,* for the respondent.

CASSODAY, C. J.   The correctness of the decision of the trial court depends upon the construction to be given to the statute which declares that:

"If any member of the police department shall while engaged in the performance of his duty as such policeman be injured *and found upon an examination by a medical officer ordered by said board* to be physically or mentally permanently disabled by reason of service in such department so as to render necessary his retirement from service in such department, such board shall retire such disabled member from service: provided, no such retirement on account of disability shall occur unless the member has contracted such disability while in the active service of such department.   Upon such retirement the board shall order payment to such retired member, monthly, from such pension fund a sum properly payable according to his grade, to wit: . . . patrolmen thirty-five dollars."   Sec. 8, ch. 265, Laws of 1899.

A prior section of the act gave to the board "exclusive control and management of the fund mentioned," and required the board to "hear and decide all applications for relief or pensions under" the act, and declared that "the decision of such board on such applications shall be final and conclusive and not subject to review or reversal, except by the board." Sec. 4, Id.   The last clause quoted was stricken out by sec. 2, ch. 176, Laws of 1901, which went into effect a month prior to the time when the relator was injured.   Those words being stricken out, it is urged that the action of the board in denying the relator's application was not "final and conclusive," but was "subject to review or reversal" by the courts.

Conceding that to be true, still it is to be remembered that

the board only had such powers as were expressly granted by the statute or necessarily implied therefrom. *Gilman v. Milwaukee,* 61 Wis. 592, 21 N. W. 640, and cases there cited. While the act authorizes the "board of its own motion" to retire "any member of the police department" who has become fifty years of age and "served twenty-two years or more in such department" (sec. 10, Id.), yet, as indicated by the language quoted, it expressly limits the powers of the board in granting such retirement for mere disability. In such cases the board is only authorized to "retire such disabled member from service" in case he was injured "while in the performance of his duty as such policeman," *and* after being "found upon an examination by a medical officer ordered by said board to be physically or mentally permanently disabled *by reason of service in such department* so as to render necessary his retirement from service in such department." Mere permanent disability while in such service is not enough to authorize such retirement, but, in addition, such medical officer must first find that such disability was "by reason of service in such department." There is no claim that the board ever ordered such examination by a medical officer, nor that such medical officer ever found as a fact, or otherwise, that the relator's disability was "by reason of service in such department." Such an examination and finding are made, by the express language of the act, conditions precedent to the retirement of such disabled member from service by any action of the board. The same section expressly prohibits such retirement "unless the member has contracted such disability while in the active service of such department." Such provisions of the statutes were express limitations upon the powers of the board, and hence could not be waived by the board. True, the permanent disability of the relator is conceded, but that did not give the board power to proceed in disregard of the mandates of the statutes. We must hold that the facts stated

in the petition and the writ are insufficient to entitle the relator to a peremptory writ of *mandamus*.

*By the Court.*—The order of the superior court of Milwaukee county is reversed, and the cause is remanded with direction to grant the motion of the defendant and quash the alternative writ of *mandamus*.