Gilman vs. The City of Milwaukee and another.

GILMAN vs. THE CITY OF MILWAUKEE and another.

*November 13 — November 25, 1884.*

*Cities — Action of common council — Reference to committee — Special assessments — Pleading — Presumption of payment of general taxes.*

The charter of the defendant city provides that all resolutions of the common council creating any charge against any of the funds of the city shall be referred to appropriate committees and shall only be acted on by the council at a subsequent meeting not held on the same day: provided, however, that when a committee shall report by resolution upon a matter referred to it by the council, action upon such resolution may be taken without further reference. The complaint alleges that a petition to the council praying that the city furnish water to the camp of a soldiers' reunion (which was to last less than a week), was referred to a committee, which thereafter·reported a resolution authorizing a permanent extension of the water-mains; that said resolution was adopted at the same meeting without further reference; that in pursuance thereof such extension was laid upon a certain street and a special tax therefor assessed upon plaintiff's lots abutting on said street; and that said lots were sold by the city treasurer *for the amount of such special assessments.* A part of the expense of the extension (including at least the street-crossings) was chargeable to the city. *Held*, on demurrer:

(1) The petition to the council did not embrace the subject matter of a permanent extension of the water-mains.

(2) The provisions of the charter above cited are jurisdictional, and, they not having been complied with, the resolution authorizing the extension and, consequently, the special assessments, were void.

(3) From the allegation that the lots were sold "for the amount of said assessments," it will be presumed that all other taxes thereon had been paid, and it was not necessary to allege such payment.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an appeal from an order overruling the demurrer, to the complaint, which stated, in effect, that the city of *Milwaukee,* one of the defendants in this action, is, and was at the several times hereinafter mentioned, a municipal corporation of the state of Wisconsin, formed and organized under the laws of said state, and that *Albert Geilfuss,* the other defendant in this action, is treasurer of said city, and was such treasurer at the time of the tax sale hereinafter mentioned; that the plaintiff is, and was at the several times hereinafter mentioned, the owner in fee simple of the following described lots or parcels of land situate, lying, and being in the city and county of Milwaukee, and state of Wisconsin, [here follows description]; that said lots, all of them, front upon Lake avenue, between a point on said avenue 500 feet north of North street and the north line of Gilman street, and constitute the entire lot frontage on said avenue, between said points, with the exception of 116 78-100 feet; that in the summer of 1880 a soldiers' reunion, so called, was held in the city of Milwaukee; that prior and preparatory to the said reunion, the people engaged in getting it up and organizing it appointed several committees, and, among others, a committee on subsistence and quarters, of which Henry Fink, Esq., was chairman; that on the 10th day of May, 1880, said Henry Fink, Esq., as chairman of said committee, presented to the common council of the city of Milwaukee a petition praying that the said city should furnish the camp of said reunion with water from the water-works of said city, and suggesting that no license should be granted for the selling of beer or liquor within 500 feet of said camp, and the regulation of fares to be

charged by licensed hacks, omnibuses, and other vehicles to and from said camp; that said common council thereupon, and on the same day, referred said petition to the committees of said council on water-works, railroads, and licenses; that at the next meeting of said council, held on the 17th day of May, 1880, said committees reported upon said petition a series of three resolutions: the first relating to licenses for the sale of liquors in the neighborhood of the proposed reunion camp; the second authorizing the board of public works to lay about 1,500 feet of water distribution pipes from the main on Lake avenue over the grounds to be occupied by the soldiers' reunion, with all necessary faucets, etc.— said pipes to be removed at the expiration of the reunion,— and appropriating an amount not to exceed $500 for the rent and labor in laying said pipes; and the third in the words following, to wit: ' *Resolved*, that the board of public works be and are hereby authorized to cause to be laid, according to law, the water-main on Lake avenue, from 500 feet north of North street to the north line of Gilman street, in the First ward;' that thereupon said common council proceeded, at the same meeting,— and without referring said resolution to any committee,— to take a vote by which they pretended to adopt said resolution, and that said resolution was never otherwise nor at any other time adopted by said council, nor was said board of public works ever otherwise directed or authorized to lay a permanent water-main on said part of said Lake avenue; that thereupon, and without any other or further authority, the board of public works of said city proceeded to lay a permanent water-main on said Lake avenue, from a point 500 feet north of North street, or thereabouts, to the north line of Gilman street, and to assess against said lots of the plaintiff special assessments for and on account of the laying of said water-main, as follows, [giving the lots, and the amount assessed on each lot, in all amounting to $1,507.02.]

" The plaintiff further saith that said assessments were

AUGUST TERM, 1884. 591

Gilman vs. The City of Milwaukee and another.

reported by said board of public works to the comptroller of said city, and were by him certified and reported to the city clerk of said city, who entered them in the tax-roll of said city, for the year 1880, against said lots, respectively, under the head of ' water-pipe assessments.' The plaintiff further shows that the defendant *Albert Geilfuss* did, at the annual tax sale of said city for the delinquent taxes of 1880, which sale was made in January, 1881, sell said lots, respectively, for the amount of said assessments, but that no certificates of said sale have yet been issued to the purchasers, nor has the amount bid on said lots at such sale been paid to said treasurer. The plaintiff charges and insists that said resolution was and is, for the purposes of authorizing a permanent water-main to be laid partly at the expense of adjoining lots, and for the purpose of authorizing special assessments on account of the same, null and void, because it was adopted on the same day, at the same meeting of said council, at which it was presented to said council, not having been referred to any committee, nor reported by any committee to whom the subject matter thereof had been referred; it being a resolution requiring the expenditure of money, and creating a charge against one of the funds of said city. The plaintiff further shows that said water-main was laid for a temporary purpose, to wit, the furnishing of water to said reunion, which was to last and did last less than a week; that said petition did not call for or contemplate any permanent extension of the water-works of said city; that there is but one permanent building along the whole line of said water-main; and that no water from the city water-works was required or desired for the use of said building; and that the levying of said assessments upon the plaintiff's said lots was, under the circumstances, not only unauthorized, but was a gross fraud and oppression, and was contrary to equity, and in violation of the just rights of the plaintiff in the premises; and that said sale of said lots for the nonpayment of

said assessments was null and void in the law, and contrary to equity and good conscience. The plaintiff further shows, upon information and belief, that the defendant *Albert Geilfuss*, as treasurer of said city, threatens and intends to issue certificates of said sale of said lots to the purchasers at said sale; and that such certificates, if permitted to be issued, will create an apparent lien upon said lots, and will constitute a cloud upon the plaintiff's title to said lots.

" Upon these facts the complaint prays for a temporary and a perpetual injunction from issuing certificates of sale of any of said lots, and from collecting the assessments, and for costs."

The defendants demurred generally to the complaint and appealed from an order overruling the demurrer.

The cause was submitted for the appellants on briefs by *Robert Luscombe*, City Attorney.

For the respondent there was a brief by *Johnson, Rietbrock & Halsey*, and oral argument by *Mr. Johnson*.

CASSODAY, J. The corporate authorities of a city possess only such powers as are expressly granted by legislative enactment, and such others as may be necessary or convenient to carry into execution the powers thus expressly granted. *State ex rel. Priest v. Regents*, 54 Wis. 169, 170; *Collins v. Hatch*, 18 Ohio, 523; *S. C.* 51 Am. Dec. 465; *Thompson v. Schermerhorn*, 6 N. Y. 92; *S. C.* 55 Am. Dec. 385; *Robinson v. Mayor*, 34 Am. Dec. 627.

Ch. 475, P. & L. Laws of 1871, entitled "An act to enable the city of Milwaukee to construct water-works and to carry on and manage the same," created a board of water commissioners with extensive powers. In pursuance of subch. 10, ch. 184, Laws of 1874, the water-works and property in charge of that board, were surrendered "to the city," and by subch. 5 of the same act there was created a "board of public works," consisting of three members, styled "com-

missioners of public works." By sec. 3 of subch. 10 of that act, this board was given power to construct jets and fire-hydrants for public use, and fountains *at such places* in the city as the board, with the approval of the common council, should determine, and also lay water-pipes in and through all the alleys, streets, and public grounds in the city. Sec. 10 of that same subchapter provided that such water-works, and all the grounds, buildings, fixtures, machinery, and other things appertaining thereto, should be under the control of the board, with power to regulate, control, and supervise the same, "*subject to the authority* of the said common council."

The scope and purpose of subch. 5 was to regulate and define the powers and duties of the board, placing them, however, substantially under and subject to the ordinances, direction, and control of the common council, especially in the matter of commencing new lines of work and new lines of expenditures. Besides, by subch. 4 the municipal government of the city is expressly vested in the mayor and common council, and to them are expressly given the management and control of the finances, and of all the property of the city, except as therein otherwise provided. They have full power and authority to make, enact, ordain, establish, and enforce all such ordinances, rules, by-laws, and regulations for the government and good order of the city, and for the benefit of the trade, commerce, and health thereof, as they shall deem expedient, and such ordinances, rules, by-laws, and regulations are thereby made to have the force of law. Sec. 3, subch. 4. And for these purposes the common council have express authority, by ordinances, resolutions, by-laws, rules, or regulations, to make, establish, and regulate public pumps, wells, cisterns, and reservoirs, and provide for the erection and maintenance of water-works for the supply of water to the inhabitants, and to prevent the unnecessary waste of water. Subd. 34 of said sec. 3. Upon these sweeping powers there are these limita-

tions: "All ordinances, and all accounts and resolutions appropriating money or *creating any charge against any of the funds of said city,* shall be referred to appropriate committees, *and shall only be acted on* by the common council at a subsequent meeting not held on the same day, on-the report of the committee to which the same were referred: provided, however, that, when a committee shall report by resolution *upon a matter referred to them* by the common council, action upon such resolution may, in the discretion of the common council, be taken without a further reference." Sec. 5, subch. 4, ch. 184, Laws of 1874, as amended by sec. 15, ch. 144, Laws of 1875.

Here we are satisfied that the subject matter of laying the permanent water-mains in question was not embraced in the petition presented to the common council by the committee of citizens. The common council referred that petition to the appropriate committees, and nothing more. That was not a reference to any committee of the subject matter of laying the permanent water-mains. Hence the report of the committee upon the subject of laying the permanent water-mains, by resolution, must be regarded as made upon a matter never referred to them by the council. This being so, such report of the resolution must be treated as the first time the subject matter therein contained was before the common council for any purpose. Being thus brought before them for the first time, the section of the charter above quoted required, in case the passage of the resolution would create any charge against any of the funds of the city, that it should be referred to an appropriate committee, and, in addition, provided that it should *only* be acted upon by the common council at a subsequent meeting, not held on the same day. The requisite steps and delay were doubtless to afford notice to all the members of the council and the public. This section is expressly prohibitory. In direct violation of it, the matter embraced in the resolution was never

referred to any committee by the common council, and was acted upon by them, not only on the same day on which it was first presented, but also at the same meeting of the council. The word "only," in the section, prohibits all action of the common council upon the merits of such resolution, except when the matter is brought before them in one of the ways and upon the conditions prescribed. Such requirements were preliminary to such action upon the merits, and, to our minds, were jurisdictional. *Wendel v. Durbin*, 26 Wis. 390. This precise question has just been so determined by the court of appeals of Kentucky. *Worthington v. Covington*, 6 Ky. Law Rep. 237. Being jurisdictional, and such preliminary requirements never having been had, the common council was without power to pass the resolution. Had the common council acquired jurisdiction in the ways prescribed, then any subsequent omission of any step directed in the charter would have been "deemed only directory," under sec. 35, subch. 18, ch. 184, Laws of 1874, as this court has frequently held. The following cases are therefore clearly distinguishable: *Wells v. Burnham*, 20 Wis. 112; *Warner v. Knox*, 50 Wis. 429; *Steinlein v. Halstead*, 52 Wis. 293.

The charter provides that "a regular lot (not corner) which may front or abut on the line of water-pipe, shall be assessed an amount equal to one half of the cost, as estimated by the said board of public works, of furnishing and laying a regular minor water-pipe of approved materials and manufacture, with the required openings for connections with private service water-pipes along the front of such lot." Sec. 16, subch. 10. The assessment upon each lot is not to exceed that amount. Sec. 15, subch. 10. Besides, the city is left to furnish hydrants and pay for street-crossings. Here there was at least one such crossing.

We must conclude that the resolution passed did create a charge against the funds of the city. Since the resolution

was void for that reason, and went to the groundwork of the assessments in question, we must hold that they too are void. *Schettler v. Fort Howard*, 43 Wis. 48; *Pound v. Supervisors*, id. 63; *Hall v. Chippewa Falls*, 47 Wis. 267.

The objection that the complaint does not allege that the plaintiff had paid his other taxes seems to be sufficiently disposed of by the fact that it does allege that the several lots in question were respectively sold for the amount of said assessments. Since it appears that the other taxes were not included, nor in any way involved in such sale or sales, we may presume that they were paid or collected. The cases in which the court has held the payment of other valid taxes requisite, are, we think, distinguishable.

The question which may be suggested from a casual reading of the complaint, as to whether the expenditures for temporarily supplying the soldiers' reunion were not *ultra vires*, will be found, on closer reading, not to arise, as the water-mains for which the assessments were made were to be permanent.

*By the Court.*— The order of the circuit court is affirmed.