Geoffrey L. BILDA, Individually, and as
representative of a class consisting of all sworn
Milwaukee County Deputy Sheriffs who are
members of the Milwaukee County Deputy
Sheriffs' Association, and Virginia Schumann,
Individually, and as representative of a class
consisting of all Milwaukee County Employes'
Retirement System members who filed an
application for retirement prior to January 1,
2001, but whose retirement is effective on or
after January 1, 2001, all retired members and
beneficiaries of members of the Milwaukee
County Employes' Retirement System receiving
pension benefits prior to January 1, 2001, and
all those members of the Milwaukee County
Employes' Retirement System eligible for
deferred vested retirement effective
January 1, 2001, Plaintiffs-Appellants,†

Frank LISKA, Randy Tylke, and Dennis
Marchewka, Individually, and as representatives
of a class consisting of all persons who are
non-represented employees of Milwaukee County,
members of the Milwaukee County Employes'
Retirement System (ERS), and who are entitled
to back-drop pension benefits under Sections 5.15
and 5.16 of Section 201.24 of the General
Ordinances of Milwaukee County,
Intervenors-Plaintiffs-Respondents,

† Petition to review denied 12/5/06.

673

v.

MILWAUKEE COUNTY and Milwaukee County Employes' Retirement System Pension Board, Defendants-Respondents,

MILWAUKEE COUNTY DISTRICT COUNCIL 48, AFSCME, AFL-CIO, Wisconsin Federation of Nurses and Health Professionals, AFT, AFL-CIO, Association of Milwaukee County Attorneys, Milwaukee County Fire Fighters' Association, Local 1072, IAFF, AFL-CIO, and Technicians, Engineers & Architects of Milwaukee County (TEAMCO), Intervenors-Defendants-Respondents.

Court of Appeals

*No. 2005AP52. Submitted on briefs December 7, 2005. —Decided July 20, 2006.*

2006 WI App 159

(Also reported in 722 N.W.2d 116.)

677

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John F. Fuchs, Esq.* of *Fuchs, DeStefanis & Boyle, S.C.* and *Eugene O. Duffy, Esq.* and *Kerry E. Dwyer, Esq.* of *O'Neil, Cannon, Hollman, DeJong, S.C.*, Milwaukee.

On behalf of the defendants-respondents Milwaukee County and Milwaukee County Employes' Retirement System Pension Board, the cause was submitted

on the brief of *Scott W. Hansen, Steven P. Bogart, Joseph W. Voiland,* and *Amy L. Reichelt* of *Reinhart Boerner Van Deuren, S.C.,* Milwaukee.

On behalf of the defendant-respondent Employes' Retirement System of the County of Milwaukee, the cause was submitted on the brief of *Emery K. Harlan, Elizabeth A. McDuffie,* and *Bethany McCurdy* of *Gonzalez, Saggio & Harlan, L.L.P.,* Milwaukee.

On behalf of the intervenor-defendant-respondent Milwaukee County District Council 48, AFSCME, AFL-CIO, the cause was submitted on the brief of *Mark A. Sweet* of *Law Offices* of *Mark A. Sweet, LLC,* Milwaukee.

On behalf of the intervenors-defendants-respondents Wisconsin Federation of Nurses and Health Professionals, AFT, AFL-CIO, Association of Milwaukee County Attorneys, Milwaukee County Fire Fighters' Association, Local 1072, IAFF, AFL-CIO, and Technicians, Engineers & Architects of Milwaukee County (TEAMCO), the cause was submitted on the brief of *Jeffrey P. Sweetland* of *Hawks Quindel Ehlke & Perry, S.C.,* Milwaukee.

Before Lundsten, P.J., Dykman and Vergeront, JJ.

¶ 1. LUNDSTEN, P.J. This is a class action brought against Milwaukee County and the Employes' Retirement System Pension Board alleging that changes to the Milwaukee County ordinances governing the retirement system constituted a taking of the class members' property interest without just compensation in violation of the Wisconsin Constitution. The suit was brought by Geoffrey Bilda and Virginia Schumann (collectively referred to as Bilda), individually and as representatives of two classes of members of the

Milwaukee County Employes' Retirement System.[1] The county ordinance they challenge, Ordinance 00–15, enhanced benefits for some but not all participants in the retirement system and reduced the vesting period

[1] Geoffrey Bilda represents a class "consisting of all sworn Milwaukee County Deputy Sheriffs who are members of the Milwaukee County Deputy Sheriffs' Association." Virginia Schumann represents a class "consisting of all Milwaukee County Employes' Retirement System members who filed an application for retirement prior to January 1, 2001, but whose retirement is effective on or after January 1, 2001, all retired members and beneficiaries of members of the [retirement system] receiving pension benefits prior to January 1, 2001, and all those members of the [retirement system] eligible for deferred vested retirement effective January 1, 2001."

In addition to the named defendants, Milwaukee County District Council 48, AFSCME, AFL-CIO, Wisconsin Federation of Nurses and Health Professionals, AFT, AFL-CIO, Association of Milwaukee County Attorneys, Milwaukee County Firefighters' Association, Local 1072, IAFF, AFL-CIO, and Technicians, Engineers & Architects of Milwaukee County (TEAMCO) intervened as defendants here. The defendants grouped themselves into four named entities: (1) Milwaukee County; (2) Milwaukee County Employes' Retirement System Pension Board; (3) the "Unions"; and (4) Milwaukee County District Council 48. Each of those four groups submitted appellate briefs. Except when necessity dictates otherwise, we refer to all defendants-respondents and intervenors-defendants-respondents collectively as "Milwaukee County" or "the County."

Frank Liska, Randy Tylke, and Dennis Marchewka, representatives of a class consisting of members of the retirement system who were entitled to certain pension enhancements created by the challenged ordinance, intervened in the circuit court. The circuit court deemed them "intervenor plaintiffs" despite the fact that they opposed Bilda's claim. The intervenor plaintiffs sought a declaratory judgment upholding the validity of the ordinance Bilda challenged. They do not participate in this appeal.

for benefits from ten to five years. Bilda argues that this ordinance and its implementation constitute an unconstitutional taking. The circuit court granted Milwaukee County's summary judgment motions and denied Bilda's cross-motion for summary judgment. Bilda appeals the orders granting summary judgment and several other circuit court orders. Bilda makes the following arguments:

(1) The circuit court erred in concluding that there was no unconstitutional taking for the following reasons:

   a) The County, in enacting Ordinance 00–15, failed to comply with 1965 Wis. Laws, ch. 405. Because the ordinance is void, the County's actions pursuant to the ordinance were an unconstitutional taking. The circuit court erred when it determined that the County complied with ch. 405.

   b) Once enacted, the County's actions pursuant to Ordinance 00–15 constitute a taking because the actions deplete the retirement system's reserves and render the system less secure. The circuit court erred in concluding that implementation of the ordinance did not constitute an unconstitutional taking.

   c) The retirement system improperly paid legal fees to the law firm of Reinhart Boerner Van Deuren, S.C., for work performed on behalf of Milwaukee County and the payment of these fees is an unconstitutional taking. The circuit court did not rule on this issue.

(2) When considering the summary judgment motions, the circuit court erred in excluding an affidavit from one of Bilda's legal experts.

(3) The circuit court erred in concluding that the Pension Board is not a proper party to the litigation.

(4) The circuit court erred by denying Bilda's motion to disqualify the Reinhart law firm due to a conflict of interest.

(5) The circuit court erred by failing to provide unnamed class members notice and the opportunity to opt out of the suit.

We reject each of Bilda's arguments and affirm the circuit court.

## *Background*

¶ 2. The Milwaukee County Employes' Retirement System is a defined benefit pension plan for county employees.[2] Participant benefits are determined by several factors, including years of service, a final average salary figure, and benefit multipliers. The system is funded by ongoing County contributions and investment returns on money held in the system. Because the benefits payable to the class members here are "defined," those benefits do not vary based on the performance of the system's investments, the amount of the County's contributions, or changes in benefits to other categories of participants.[3]

---

[2] For the reasons explained in *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶ 1 n.1, 292 Wis. 2d 212, 713 N.W.2d 661, *review denied* (WI June 14, 2006) (No. 2004AP2539) ("*Bilda I*"), we use the older statutory spelling "employe" when quoting the older legislative enactments and the county ordinance and when referring to the Pension Board by its full title. Otherwise, we use the spelling now used in statutes, "employee."

[3] If any county employees are entitled to benefits that are not "defined," the parties do not tell us that. There is no suggestion that, if undefined benefits exist, they affect the issues in this case.

¶ 3. In the fall of 2000, the director of human resources for Milwaukee County, Gary Dobbert, suggested pension benefit enhancements for certain classes of employees, not including the plaintiff classes.[4] The ordinance containing the proposed amendments—Ordinance 00–15—included the following: (1) a change in the method of calculating the final average salary used to calculate pension benefits for participants hired before January 1, 1982, that produced a higher average salary and, therefore, a higher defined benefit; (2) an increase in the pension benefit multipliers used in calculating pension benefits for participants hired on or after January 1, 1982; (3) a reduction in the vesting period so that participants' pension benefits would vest after five years rather than ten; and (4) the creation of an optional "backDROP" program which allowed vested participants to obtain a lump-sum payment upon retirement followed by reduced monthly payments, rather than receiving "full" monthly payments. Ordinance 00–15 did not affect the County's obligation to fund the benefit system or to pay benefits.

¶ 4. Director Dobbert referred the proposed amendments to the County's Pension Study Commission (the Commission). The Commission reviewed the proposed ordinance in a meeting on October 27, 2000. At that meeting, commission members questioned Dobbert and two members of the retirement system's independent actuary firm, Dennis Skelly and Glenn

---

[4] The circuit court determined that none of the benefit enhancements at issue here apply to the plaintiff classes. It is not apparent to us that this is true. For example, it appears that members of the Bilda class (as opposed to the Schumann class) may be eligible to receive the benefits of the backDROP program. However, this finding by the court does not affect our analysis.

Soderstrom, regarding the proposed changes. The Commission received a letter from Skelly, including cost estimates for most of the changes, and a memo from Dobbert. The Dobbert memo outlined all of the changes, stated that the changes had been reviewed by an actuary, and stated that changes not accounted for in Skelly's letter would have "minimal impact" on the retirement system. The Commission voted three to two to recommend adoption of Ordinance 00–15 by the County Board.

¶ 5. The County Board adopted the ordinance on November 2, 2000, and the amendments became effective January 1, 2001.

### Discussion

¶ 6. We review summary judgment decisions *de novo,* applying the same method as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That method is well established and need not be repeated in full here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. For purposes of this case, it is sufficient to say that the evidence "must be viewed in the light most favorable to" the non-moving party and, if the moving party fails to establish clearly that there is no genuine issue of material fact, the motion must be denied. *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979).

### I. Constitutional Takings Analysis

¶ 7. When a claimant asserts a violation of the takings clause of the Wisconsin Constitution, courts undertake a two-part analysis. We determine whether a

property interest exists and, if so, determine whether the property has been taken. *Wisconsin Prof'l Police Ass'n v. Lightbourn*, 2001 WI 59, ¶¶ 132–33, 243 Wis. 2d 512, 627 N.W.2d 807. Often, an analysis of whether a property interest exists is "intertwined with the question of whether any property interest has been taken." *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶ 14, 292 Wis. 2d 212, 713 N.W.2d 661, *review denied* (WI June 14, 2006) (No. 2004AP2539) (citing *Lightbourn*, 243 Wis. 2d 512, ¶¶ 189–92) ("*Bilda I*").

## A. Whether The Ordinance Is Void

¶ 8.    Bilda argues that Milwaukee County failed to comply with the procedure required under 1965 Wis. Laws, ch. 405 in adopting Ordinance 00–15. Bilda reasons that, if the ordinance is void, *any* expenditure from the retirement system pursuant to the ordinance is an improper use of system assets and is, therefore, an unconstitutional taking.[5] The County responds that it did comply with ch. 405 when it adopted Ordinance 00–15. We agree.[6]

---

[5] Bilda impliedly assumes that, if an ordinance requiring additional payments from the retirement system is void, compliance with such an ordinance is an unconstitutional taking, even if compliance with the same properly adopted ordinance would not be an unconstitutional taking. We understand Bilda to be arguing that compliance with a void ordinance is a taking because money paid out pursuant to a void ordinance is, by definition, used for an improper purpose and retirement system participants have a constitutional right to the proper use of system funds. Because we conclude that the ordinance was adopted in compliance with the minimal requirements imposed by 1965 Wis. Laws, ch. 405, we need not address whether Bilda's underlying takings theory is valid.

[6] The County, relying on Wis. Stat. § 889.04 (2003–04), argues in the alternative that, because the ordinance had been

¶ 9. The state law governing enactment of ordinances amending the retirement system at issue here, 1965 Wis. Laws, ch. 405, § 2, provides, in part:

> The [pension study] commission shall advise the county board as to the actuarial effect and the cost implications of all proposed changes. No change in a retirement system shall be considered by the county board until it has been referred to the commission established hereunder and until said commission has submitted a written report on the proposed change.

Bilda argues that this law includes three requirements: (1) the proposed changes must be "referred" to the Pension Study Commission; (2) the Commission must submit a written report on the proposed changes; and (3) the written report must advise the County Board as to actuarial effects and cost implications of the changes. Bilda contends that the County failed to comply with all three requirements. However, the undisputed facts show that the County complied with these three requirements.

¶ 10. The resolution of most of Bilda's arguments requires that we construe various words and phrases in 1965 Wis. Laws, ch. 405.

> [S]tatutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.

adopted more than three years prior to the time the parties moved for summary judgment, the ordinance must be deemed procedurally sound. The County also argues in the alternative that Bilda's 1965 Wis. Laws, ch. 405, § 2 claim is barred because Bilda failed to comply with the notice of claim statute, WIS. STAT. § 893.80 (2003–04). Because we conclude that the County complied with ch. 405, we do not address these arguments.

*State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

### 1. *Referring Entity*

■

¶ 11.   Bilda contends that the proposed changes to the retirement system were not "referred" to the Pension Study Commission within the meaning of the law because they were not referred *by a proper entity*. 1965 Wis. Laws, ch. 405, § 2 provides that the County Board may not consider a change to the retirement system "until it has been referred to the commission." The ordinance in this case was referred to the Commission by Gary Dobbert, then Director of Human Resources for Milwaukee County. Bilda argues that *only* the County Board may refer a proposed ordinance to the Commission because, historically, the County Board has referred proposed changes to the system to the Commission. But even if it is true that the County Board was the only entity that had previously referred proposed changes, nothing in the language of ch. 405 so limits the identity of the referring entity.

¶ 12.   Moreover, Bilda does not argue that the language in 1965 Wis. Laws, ch. 405 is ambiguous, and we perceive no ambiguity. The plain language of the law requires only that the change be "referred" to the Commission. It does not address the identity of the referring party. We therefore conclude that Dobbert's referral of the ordinance to the Commission satisfied the referral requirement in ch. 405, § 2.[7]

---

[7] Bilda cites *Gilman v. City of Milwaukee*, 61 Wis. 588, 21 N.W. 640 (1884), for the proposition that a "lack of proper

## 2. Written Report

¶ 13.    1965 Wis. Laws, ch. 405 requires the submission of a "*written report* on the proposed change" (emphasis added). The circuit court concluded that a memo created by Dobbert, a letter from the retirement system's actuary, Dennis Skelly, and the minutes of the Commission meeting regarding the ordinance constituted a written report. Bilda disagrees. He argues that the documents are not a "written report" within the meaning of the law because the Commission did not vote to adopt them as its written report. Bilda, however, provides no support for the proposition that, for purposes of the law, the Commission must vote to adopt written materials before they may be considered a "written report."

¶ 14.    Further, in *Bilda I*, we concluded that, where the Commission had submitted only minutes of its meeting, the minutes were sufficient to satisfy the "written report" requirement in 1965 Wis. Laws, ch. 405. *See Bilda I*, 292 Wis. 2d 212, ¶ 12 ("[A] legislative enactment will not be set aside for failure to conform to 'the strict letter' of a procedural requirement where the 'object and purpose' of the requirement has been accomplished." (citing *State ex rel. Crucible Steel Casting Co. v. Wisconsin Tax Comm'n*, 185 Wis. 525, 534–35, 201 N.W. 764 (1925))).

■
¶ 15.    Accordingly, we conclude that the Commission's minutes, Dobbert's memo, and Skelly's letter constitute a "written report" within the meaning of 1965 Wis. Laws, ch. 405.

referral" renders a legislative action void. Bilda's reliance on *Gilman* is misplaced. *Gilman* dealt with an entirely different statute that expressly identified from where, and to whom, referrals are made. *See id.* at 594.

### 3. Submitted

■

¶ 16.   1965 Wis. Laws, ch. 405, § 2 states:   "No change in a retirement system shall be considered by the county board until . . . [the] commission has *submitted* a written report on the proposed change." (Emphasis added.) Bilda argues that it is undisputed as a factual matter that the Commission did not *submit* a written report to the County Board because there is no evidence that the Commission forwarded the memo, letter, and minutes to the County Board. In the alternative, Bilda contends that there is a disputed question of fact as to whether the documents were submitted. We reject both arguments.

¶ 17.   The County points to evidence showing that the documents were forwarded to the County Board. First, the County cites the deposition testimony of Maribeth Welchman, an administrative secretary and committee clerk for the personnel committee of the County Board. Welchman testified that she included the Dobbert memo and Skelly letter in a "green file." A "green file" is a type of file that is compiled for the County Board for its consideration of ordinances. A county board supervisor testified that "green files" are available at County Board meetings. Furthermore, the resolution adopting the ordinance states the following:

> WHEREAS, on October 27, 2000, the Pension Study Commission considered a report from the Director, Department of Human Resources, dated October 25, 2000 (a copy of which is contained herein in File No. 00–666) outlining pension ordinance revisions associated with the benefit level adjustments for non-represented employees and managers for 2001 through 2004, and approved same (Vote 3–2) . . . .

The resolution also states that the County Board's personnel committee considered the same report and voted to approve the ordinance five to one. If unrebutted, this evidence shows that the memo, letter, and minutes were submitted to the County Board.

¶ 18. Bilda's argument is based on the deposition testimony of three Pension Study Commission members, who are also County Board supervisors, who stated that they did not remember seeing the Dobbert memo or the Skelly letter at the time of the Commission's meeting regarding the proposed ordinance. Accepting as true that these three members did not remember seeing these documents because they in fact did not see them, this fact does not contradict the evidence showing that the documents were submitted to and available for review by the County Board. The law does not require that County Board supervisors actually see and review a submitted report, only that the report be submitted. Thus, undisputed evidence shows that the report was submitted.

### 4. "[A]dvise" On The "Actuarial Effect"

¶ 19. Chapter 405 requires the Commission to "*advise* the county board as to the *actuarial effect* and the cost implications" of the ordinance. 1965 Wis. Laws, ch. 405, § 2 (emphasis added). Relying on expert testimony defining an "actuarial report," Bilda argues that the documents submitted by the Commission to the County Board do not comprise an "actuarial analysis" or an "actuarial report" and, therefore, the Commission could not have complied with the requirement that it "advise" the County Board on the "actuarial effect." We disagree. As explained below, ch. 405 does not require something as specific as what Bilda's expert defines as

692

an "actuarial report," and Bilda fails to develop an argument that the law should be so interpreted.

¶ 20. When interpreting legislation, we give language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶ 45. Further, when a term in a statute is undefined, we consult a dictionary to discern its common meaning. *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶ 14, 273 Wis. 2d 612, 682 N.W.2d 365; *see also State v. Polashek*, 2002 WI 74, ¶¶ 19–21, 253 Wis. 2d 527, 646 N.W.2d 330 (consulting BLACK'S LAW DICTIONARY, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, and OXFORD ENGLISH DICTIONARY).

¶ 21. Bilda does not provide support for the proposition that the legislature intended the term "actuarial effect" to have meaning apart from its common meaning. Resorting to a dictionary, we learn that "actuarial" means "of or relating to actuaries" and "relating to statistical calculation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 (unabr. ed. 1993). Black's defines "actuary" as "[a] statistician who determines the present effects of future contingent events." BLACK'S LAW DICTIONARY 39 (8th ed. 2004). That dictionary also defines an "actuarially sound retirement system" as "[a] retirement plan that contains sufficient funds to pay future obligations." *Id.* These definitions lead us to conclude that 1965 Wis. Laws, ch. 405 requires that the Commission advise the County Board regarding the system's ability to fund any changes. Chapter 405 speaks to the type of advisement the Commission must give; it does not speak to the underlying quality of the advice or the nature of its support.

¶ 22. Bilda and many others view the Commission's actuarial advice as profoundly flawed. But the actuarial advisement requirement at issue here does not speak to the quality of the advice. Moreover, Bilda provides no authority for the proposition that the Commission must engage in some particular type of actuarial study or that it need produce a particular type of actuarial report.

¶ 23. Bilda cites *City of Erie v. International Association of Firefighters Local 293*, 836 A.2d 1047 (Pa. Commw. Ct. 2003), as support for the proposition that the Commission here was required to provide a detailed actuarial analysis. However, the statute at issue in *Erie* was more demanding in that it expressly required an "actuarial report" stating that the system would be "actuarially sound" after the change. *Id.* at 1051. To the extent the *Erie* court concluded that the modification to the city's pension plan failed to comply with the Pennsylvania statute because the report did not state the pension plan would be "actuarially sound," *id.* at 1051–52, the holding does not apply here because our law does not impose such a requirement. To the extent the *Erie* decision might be read as construing the Pennsylvania statute to impose the substantive requirement that the pension plan *be* "actuarially sound after the modification," the case does not help Bilda because the Wisconsin law imposes no similar soundness requirement.

¶ 24. In contrast with the Pennsylvania statute, there are no provisions in 1965 Wis. Laws, ch. 405 regarding a specific type of actuarial report that must be produced or what that report must contain. The only requirement in ch. 405 is that the Commission advise the County Board as to the "actuarial effect" and "cost

implications" of the changes. We conclude that the documents submitted to the County Board satisfy these narrow requirements.

¶ 25. The Dobbert memo stated the following:

> The establishment of the "back drop" benefit and sick allowance pay out have minimal impact on the pension system. The actuary has reviewed the cost of these benefit revisions and has provided the attached letter.

The attached Skelly letter estimated the annual costs involved with changing the multiplier number for pension benefits for certain system participants, changing the vesting period from ten to five years, changing the final average salary to a three-year as opposed to five-year average, and increasing the final average salary by 7.5%. The letter estimated those annual costs for the next thirty-five years. The letter went on to state that, at a given rate of return on investment, the pension fund could be fully funded without any additional contribution from the County. The letter stated that below that threshold, however, additional County funds would be necessary.

¶ 26. Further, at the commission meeting, commission members questioned Skelly and Glenn Soderstrom, from the County's actuarial firm, and Dobbert. Commission members questioned those three about whether the ordinance would require increased funding from the County in order to fully fund the retirement system.[8] Skelly and Soderstrom told the commission

---

[8] Bilda characterizes the commission members' questions at this meeting as concerning only the potential "tax savings" from the changes. We disagree with this characterization. The discussions about taxes involve the commission members' hesitation to enact a change to the retirement system that would require an increased tax levy in order to fully fund the retire-

members that whether additional County contributions would be required would depend on the rate of investment return. The minutes of this meeting were then submitted to the County Board.

¶ 27. Thus, the report that the Commission submitted to the County Board—the Dobbert memo, the Skelly letter, and the Commission's minutes—advised the County Board on the projected actuarial effects of the proposed changes. The report indicated that the cost of the majority of the changes would be $7,654,000 per year for thirty-five years, and that the cost for the backDROP program would be "minimal."

¶ 28. Bilda's primary contention is that the actuarial advice was not based on sound actuarial information. For example, Bilda argues that Dobbert intentionally misled the Commission into thinking that the effects of the backDROP program were "minimal." And Bilda contends that Skelly testified that he did not consider the costs of the backDROP program until after the resolution adopting the ordinance had passed. However, nothing in 1965 Wis. Laws, ch. 405 requires that the advice the Commission gives the County Board be accurate or sound. It requires only that the advice be given. Thus, the Commission complied with the limited

ment system. For example, commission chairman Krug expressed his concerns as follows: "It's only four or five years ago [inaudible] that we were putting about $20 million in cash tax levy into the pension fund. Now we are down to virtually zero. We don't want to go back to $20 million; we don't want to have a jump of $10 million in one year." It is clear that the commission members' questions revolve around whether the County would be required to provide additional funding to fully fund the retirement system and, therefore, whether increased tax levies would be required.

"advise" requirement of ch. 405 when, undeniably, it advised the County Board as to projected actuarial effects of the changes.[9]

## B. Whether The Ordinance Results In An Unconstitutional Taking

¶ 29.  Ordinance 00–15 made four changes to the Employes' Retirement System. First, it increased pension benefits for some, but not all, participants by including a "bonus" for some which increased their final average salary used to calculate pension benefits. Second, the ordinance increased the pension benefit "multiplier" number for some participants. Third, the ordinance reduced the vesting period for pension benefits for some participants from ten to five years. Fourth, the ordinance created the backDROP plan, which provided qualifying vested members with the option of receiving a partial lump-sum payment of retirement benefits and a reduced monthly payment thereafter, rather than receiving "full" monthly payments.

---

[9] Bilda makes much of the fact that the County pled the following in its counterclaim:

> The actuarial report and cover memo submitted to the Pension Study Commission may have misled that Commission to believe that the actuarial effects and cost implications of the proposed backDROP benefit had been examined by an actuary and had been found to be insignificant when, to the contrary, the effects were not insignificant and no such actuarial study had occurred.

Thus, Bilda argues, "[i]t is admitted there was no examination of the actuarial effects and cost implications of the backdrop." But again, Bilda's argument assumes 1965 Wis. Laws, ch. 405 requires the changes to be studied in a particular fashion. It does not. All that ch. 405 requires is that the Commission "advise" the County Board as to the effects of the changes.

697

¶ 30. Bilda argues that these changes added new vested members to the Employes' Retirement System and otherwise acted to deplete the system's reserves, rendering the system less secure. Bilda contends that all retirement system participants have a property interest in the system's stability, and that these changes constitute an unconstitutional taking because they reduce the stability. We reject Bilda's legal analysis.

¶ 31. To succeed, Bilda must demonstrate that the ordinance is unconstitutional beyond a reasonable doubt. *See Lightbourn*, 243 Wis. 2d 512, ¶ 62; *see also Dog Fed 'n of Wis., Inc. v. City of South Milwaukee*, 178 Wis. 2d 353, 359, 504 N.W.2d 375 (Ct. App. 1993) (ordinances, in the same manner as statutes, are presumed to be constitutional). "Our duty is to uphold a legislative act if at all possible." *Lightbourn*, 243 Wis. 2d 512, ¶ 63.[10] In a takings case, we first determine whether a property interest exists and, if it does exist, we then determine whether the property has been taken. *Id.*, ¶¶ 132–33.

¶ 32. Bilda primarily relies on four cases to support his takings argument: *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis. 2d 1, 558 N.W.2d 83 (1997); *Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 544 N.W.2d 888 (1996); *State Teachers' Ret. Bd. v. Giessel*, 12 Wis. 2d 5, 106 N.W.2d 301 (1960); and *Milwaukee Police Ass'n v.*

---

[10] Bilda makes a one-sentence argument that the ordinance is not entitled to a presumption of constitutionality because it was "smuggled" through the adoption process, and cites *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 439, 518 N.W.2d 276 (Ct. App. 1994), for support. We decline to address this argument because it is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to review an issue inadequately briefed).

*City of Milwaukee*, 222 Wis. 2d 259, 588 N.W.2d 636 (Ct. App. 1998). Bilda correctly points out that these cases establish that participants in a retirement system have a property interest in the security of the system. *See State Prosecutors*, 199 Wis. 2d at 558–59. And, participants have a right to " 'the proper use of the earnings' " in such a system. *Id.* at 559 (quoting *Giessel*, 12 Wis. 2d at 10). Thus, where system or trust funds are used for "improper" purposes, a taking occurs. *See, e.g., Retired Teachers Ass'n*, 207 Wis. 2d at 20–25 (changes to disbursements in earnings that directly contradicted statutory provisions governing the operation of the Wisconsin Retirement System were an improper use of system funds); *State Prosecutors*, 199 Wis. 2d at 563 (the state could not " 'reach' into the County Plan to pay for obligations [the state] has incurred"); *Giessel*, 12 Wis. 2d at 11 (the cost of a legislative study regarding retirement systems was "not a proper expense of the teachers' retirement fund"); *Milwaukee Police Ass'n*, 222 Wis. 2d at 267–68 (the use of city retirement funds to pay for duty disability benefits "divert[ed] from the retirement fund monies that are attributable to employees who have vested rights in the fund").

¶ 33. Accordingly, Bilda has the burden of demonstrating that compliance with Ordinance 00–15 constitutes an "improper use" of system funds or otherwise renders the system less secure, as those concepts are defined in takings case law.[11] Bilda has not met his burden.

[11] Some of Bilda's arguments are couched in the context of his having a right to the "security" of the retirement system. While we recognize that such a right exists, Bilda has not explained the extent of that right or its application here, apart from his "proper use" argument. *See Wisconsin Prof'l Police*

¶ 34.    First, Bilda argues that the benefit enhance-ments in Ordinance 00–15 constitute a taking because those benefits are bestowed on a "minority" of retire-ment system members. We reject this argument for the same reason the supreme court rejected a similar argu-ment in *Lightbourn*.[12] In *Lightbourn*, the court con-cluded that benefit disparities were not improper be-cause they are "endemic" to, that is to say an unavoidable part of, a large retirement system like the Wisconsin Retirement System because of the varying types and numbers of employees and employers in-volved. *Lightbourn*, 243 Wis. 2d 512, ¶ 139. Similar reasoning applies here. Indeed, Bilda does not and could not reasonably contend that disparities in system ben-

*Ass'n v. Lightbourn*, 2001 WI 59, ¶ 191, 243 Wis. 2d 512, 627 N.W.2d 807 (while participants have a right to their benefits being fulfilled, they do not have a right to "require a balance in the employer reserve that is greater than an amount prudently necessary to fulfill statutorily-determined benefit commitments over an actuarially-determined period of time"). Bilda never defines what a "secure" retirement system is and, consequently, does not offer a test for determining whether a retirement system is no longer secure. However, because we conclude that Ordinance 00–15 is not the *cause* of any insecurity, if any exists, we need not decide what must be shown to demonstrate that a retirement system is "insecure."

[12] The parties to this appeal spend much time disputing whether the *Lightbourn* decision, addressing the Wisconsin Retirement System, applies here to the County's retirement system. We recently resolved this issue in favor of the County. After briefing was completed here, we decided *Bilda I*, where we concluded that the *Lightbourn* analysis is applicable to the County's retirement system. *See Bilda I*, 292 Wis. 2d 212, ¶ 15. We are bound by that decision. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

efits prior to the enactment of Ordinance 00–15 were unconstitutional. The fact that different employee groups may negotiate different benefits shows that such disparity is endemic to the Milwaukee County Employes' Retirement System as well. Most importantly, Bilda has not pointed to any provision of the retirement system or any other authority that limits the range of permissible disparity. We conclude, therefore, that Bilda has not shown that additional disparities caused by the ordinance render the ordinance unconstitutional.

¶ 35.   Second, Bilda argues that changing the vesting period from ten to five years added new vested members, thereby "dilut[ing] the trust assets and add-[ing] to the financial instability of [the Employes' Retirement System] in violation of [1947 Wis. Laws, ch. 357]."[13] Bilda argues, therefore, that the funds are being used for an improper trust purpose and make the system less secure, thus constituting a taking.

¶ 36.   We question Bilda's reliance on 1947 Wis. Laws, ch. 357. In 1965, the legislature granted the County "home rule" of the Employes' Retirement System. 1965 Wis. Laws, ch. 405. The legislature's direction

---

[13] The portion of 1947 Wis. Laws, ch. 357 that Bilda cites provides:

> The legal title to the funds of the retirement system shall be in the retirement system created by this act and shall be held by it in trust for the purposes for which they were contributed under this act, and no amendment to the act shall reduce the benefits of any member below those which can be provided by the reserves of the system held in his account, nor shall the reserves held on account of any member be diluted by the addition of new members or annuitants receiving the benefits of any members.

1947 Wis. Laws, ch. 357, § 24.

to the County was that it may "make any changes in [the] retirement system which ... may be deemed necessary or desirable for the continued operation of [the system]," provided participants' rights and benefits are neither "diminish[ed]" nor "impair[ed]" by the change. 1965 Wis. Laws, ch. 405, § 2. Thus, it is possible that ch. 405 superseded the provisions of ch. 357. *See Bilda I*, 292 Wis. 2d 212, ¶ 18 (the "home rule" provision superseded provisions in 1937 Wis. Laws, ch. 201 directing the method of county funding to the Employes' Retirement System). We do not address that issue, however, because Bilda does not demonstrate that *the ordinance itself* is the cause of negative effects on the retirement system.

¶ 37.   Bilda's argument boils down to the contention that an unconstitutional taking occurred because significant benefit enhancements were added without corresponding funding to the system, thereby "diluting" the fund and rendering the system less secure. Bilda, however, does not point to anything *in the ordinance* that requires or necessarily causes under-funding. The ordinance does not relieve the County of its funding obligations.[14]

---

[14] The supreme court has discussed the manner in which the Milwaukee County Employes' Retirement System is funded:

The County Plan is a defined benefit plan in which its members are assured they will receive a specific retirement benefit calculated as a percentage of their final average salary multiplied by their years of county service. Actuaries make projections such as plan participation, future employee salary increases, the ages at which participants are expected to retire and economic assumptions. Actuaries then examine the covered employees to ascertain the cost of the plan. They examine age, employment and salary history for all individual participants. The individual participant data is the basis for determining the employer's annual contribution. After the actuarial findings, contributions are made by the

¶ 38. It appears that Bilda's real concern is his belief that the County is not *complying* with its funding obligations. For example, Bilda argues that Milwaukee County "routinely contributes its budgeted amount rather than the contribution determined by the [Employes' Retirement System] actuary and amortizes the remaining underpayment," and that the County "manipulated changes in the amortization period for unfunded liabilities and the assumed interest rate, all in an effort to postpone contributions." Even assuming those contentions are correct, however, they are not caused by Ordinance 00–15. Ordinance 00–15 created benefit enhancements. The ordinance does not affect any separate obligation the County has to fund the retirement system.

¶ 39. To bring this issue into sharp relief, if Bilda's legal theory was correct, all benefit enhancements to the system would be unconstitutional because any time the County Board adopts a benefit enhancement, there is the possibility that the County will not provide corresponding funding. In his effort to undo these particular benefit enhancements, Bilda may be able to ignore the broad implications of his argument, but we cannot.

¶ 40. In sum, Bilda fails to persuade us that the adoption or implementation of Ordinance 00–15 constitutes an unconstitutional taking.

employer to cover the plan's anticipated present and future liabilities . . . . The Milwaukee County Pension Board administers the County Plan and submits the pertinent data, including the actual contribution required, to the County's board of supervisors each year.

*Association of State Prosecutors v. Milwaukee County,* 199 Wis. 2d 549, 555, 544 N.W.2d 888 (1996).

## C. Whether The Payment Of Reinhart's Legal Fees Is A Taking

¶ 41. Bilda argues that there is a separate takings claim based on the use of retirement system funds to pay the Reinhart law firm's legal fees. According to Bilda, retirement system funds were improperly used to pay Reinhart to draft Ordinance 00–15 and to "advise [Milwaukee County] on negotiation strategy" with system participants. Bilda's lean supporting argument consists of his assertion that the payment is a taking, followed by a cite to *Giessel*, 12 Wis. 2d at 10–11.

¶ 42. The County responds that Bilda has waived this argument by failing to raise it with sufficient prominence and by failing to object when the circuit court did not address it. We agree with the County that Bilda has waived the argument by failing to raise it with sufficient prominence.

¶ 43. Bilda's Reinhart-payment-takings argument is not contained in his summary judgment motion or supporting memoranda. At least Bilda has not directed our attention to any such argument, and we do not find it. Responding to the County, Bilda points to two places in the record where he made the Reinhart-payment-takings argument. But, in both instances, the argument is buried and undeveloped.

¶ 44. Bilda first points to a 170–page hearing transcript that records lengthy arguments by counsel and exchanges with the circuit court. At the beginning of the hearing, Bilda's counsel spoke for an extended period of time, covering 26 pages of transcript. During that initial argument, Bilda's counsel made brief reference to three alleged improper expenditures from retirement fund assets, one of these being payments to the Reinhart firm. Counsel's reference to the Reinhart

payment is two sentences long and Bilda has abandoned his argument regarding the other two expenditures. There is a single reference to the *Giessel* decision, but no legal discussion applying *Giessel* to the facts. Indeed, counsel's lead-in to his brief discussion suggests he is not seriously pursuing the issue: "Now, my colleagues always criticize me because I get every detail, and there is one other little element that I just can't let pass . . . ."

¶ 45. The only other place Bilda points to as showing he preserved the Reinhart-payment-takings argument is a letter he sent responding to the circuit court's request for clarification of the relief sought by the parties with respect to the summary judgment motions. But in that letter, Bilda's reference to this particular takings argument is well hidden in his statement requesting that the court rule that Ordinance 00–15, and compliance with it, is unconstitutional.

¶ 46. In light of the complexity of this case, and the number of arguments made by the parties, we conclude that Bilda failed to raise the issue with sufficient prominence to apprise the circuit court of it and has, therefore, waived the issue. *See Bishop v. City of Burlington*, 2001 WI App 154, ¶ 8, 246 Wis. 2d 879, 631 N.W.2d 656 ("A litigant must raise an issue with sufficient prominence such that the trial court understands that it is being called upon to make a ruling.").[15]

---

[15] We note that Bilda directs our attention to evidence in the record relating to payments to the Reinhart firm and to factual references to Reinhart's work for the County. But this evidence appears in the context of Bilda's separate request that the court disqualify Reinhart based on an alleged conflict of interest owing to Reinhart's representation of both the County and the Pension Board. Thus, these portions of the record

705

## II. Affidavit Of Bilda's Legal Expert

¶ 47. Bilda argues that the circuit court erred in striking the affidavit of his legal expert, Thomas Hayes. Bilda asserts that Hayes is a legal expert in the area of pension issues, and the circuit court should have considered Hayes's legal opinions. The County responds that the Hayes affidavit was properly excluded because it contained only conclusions of law and, therefore, the circuit court was at liberty to ignore it. We agree.

¶ 48. Affidavits which contain assertions of "ultimate fact" or conclusions of law must be disregarded. *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 54 n.19, 246 Wis. 2d 933, 632 N.W.2d 59. Hayes's affidavit does precisely that. Attached to Hayes's affidavit is a twenty-page report prepared by Hayes. Almost all of Hayes's report tracks the legal arguments Bilda makes before this court. The report offers legal opinions regarding the retirement system participants' property interests, whether the ordinance constituted a taking, and whether the enactment of the ordinance complied with 1965 Wis. Laws, ch. 405, § 2. The Hayes report also includes legislative history, and legal opinions regarding the meaning of that history, which again amounts to nothing more than legal argument.

¶ 49. Bilda cites *Hennig v. Ahearn*, 230 Wis. 2d 149, 601 N.W.2d 14 (Ct. App. 1999), for the proposition that "[l]awyers are appropriately used as expert witnesses." But *Hennig* is inapposite. *Hennig* involved an attorney who focused his practice on business law and

---

would not have apprised the circuit court that Bilda was making a takings claim relating to payments to the Reinhart firm.

who testified concerning "the customs of business executives" regarding negotiating and drafting agreements. *Id.* at 182. The subject of the expert's testimony was the "customs" of business executives, not legal analysis.

¶ 50.   We conclude that the circuit court properly declined to consider the Hayes affidavit and attached report.

### III. Whether The Employes' Retirement System Pension Board Is A Proper Party

¶ 51.   The circuit court granted the Pension Board's motion for summary judgment on the merits. However, the court also concluded the Pension Board was not a proper party to the litigation. Bilda argues on appeal that the circuit court erred in dismissing the Board as a party. Because we affirm dismissal of all of Bilda's claims, we need not address whether the Pension Board is a proper party. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (if one issue is dispositive, there is no need to address others).

### IV. Reinhart's Representation Of Both The County and The Retirement System Pension Board

¶ 52.   Bilda argues that the circuit court erred in not disqualifying the Reinhart law firm because the firm had a conflict of interest in representing both Milwaukee County and the Employes' Retirement System Pension Board.[16] As reasons justifying disqualifi-

---

[16] Bilda filed a motion with this court to disqualify the Reinhart firm as appellate counsel for defendants. On July 8, 2005, we denied that motion because Bilda did not explain why

cation, Bilda notes that Reinhart "developed" Ordinance 00–15; that the retirement system "sought Reinhart's advice on compelling payment of millions in delinquent [Milwaukee County] contributions"; and that Reinhart "billed and received payment from [the retirement system] for services provided to [Milwaukee County]," the implication being that Reinhart would have to take conflicting positions with respect to these two clients. The flaw in Bilda's appellate argument is that he fails to address the defendants' waiver of the alleged conflict of interest.

¶ 53. The circuit court denied Bilda's motion to disqualify Reinhart for two alternative reasons:(1) there was no conflict of interest; and (2) if there was a conflict, it was waived by virtue of the County's and the retirement system's informed consent to joint represen-

he believed we had the authority to take that action, and because Bilda did not suggest that any new facts or circumstances had arisen since the circuit court's disqualification decision that would provide a separate basis for appellate disqualification. In our order, we stated: "[C]ounsel are presumptively not disqualified, and that will continue to be counsel's status until such time as movants make a satisfactory showing that we have the authority to disqualify counsel, and that there is some new circumstance about the appeal, as apart from the trial court proceeding, that compels disqualification before we get to the merits of the case." On appeal, Bilda refers vaguely to our authority to "regulate counsel who appear before [us]," and argues that our "inherent authority permits [us] to disqualify Reinhart." In support, he cites two cases: *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 595 N.W.2d 635 (1999), and *Aspen Services, Inc. v. IT Corp.*, 220 Wis. 2d 491, 583 N.W.2d 849 (Ct. App. 1998). Neither case, however, deals with the disqualification of counsel. Further, Bilda has not demonstrated any "new circumstance." We therefore reaffirm our order denying Bilda's request that the Reinhart firm be disqualified for purposes of this appeal.

tation. Since Bilda provides no reason why the circuit court could not accept the waiver, we decline to address his argument that the court erred.

## V. Notice To Unnamed Class Members

¶ 54.   Prior to the completion of briefing in this appeal, Bilda moved for summary reversal of the circuit court's order granting summary judgment in favor of the County. Bilda's motion argued that we should vacate the circuit court's order because the court violated the due process rights of unnamed class members by failing to provide them notice and the opportunity to opt out of the proceedings.[17] We held the motion in abeyance pending full briefing. We deny that motion for three reasons. First, Bilda has not demonstrated that the notice issue is properly before us. Second, even if we accept, for argument's sake, Bilda's proffered legal analysis regarding the necessity of notice, notice was not required here. Third, Bilda fails to support his request that we reverse in the interest of justice. We discuss these three reasons below.

¶ 55.   Bilda's motion purports to protect the interests of the unnamed plaintiffs who were not given notice and a chance to opt out. Bilda, however, does not

---

[17] Bilda asserts in his summary disposition memorandum that the Pension Board, the Unions, and District Council 48 "are precluded from arguing that [Bilda class] members were not entitled to notice and opt-out rights." Bilda asserts that, as a "trustee" of the retirement system, the Pension Board cannot take a position adverse to the "interests of the beneficiaries." Bilda argues that the Unions and District Council 48 are precluded from opposing the motion based on judicial estoppel. We find it unnecessary to address this issue because we need not rely on the briefs of those parties to deny Bilda's motion. Rather, it is Bilda's own arguments that fail to persuade us.

709

identify the interests in need of protection. It would seem that if our decision to affirm the summary judgment orders is proper, then it is proper as to any unnamed plaintiffs who would have received notice and would have chosen not to opt out. Thus, Bilda's concern is not with the rights of this group. Instead, it appears Bilda is seeking to protect a hypothetical group who would have received notice and would have chosen to opt out of Bilda's representation. As to this "opt out" group, is Bilda saying it would be unfair for its members to be bound by summary judgment? Apparently not, because Bilda tells us this is not a problem. According to Bilda, when notice is required, giving notice and the opportunity to opt out is a requirement for personal jurisdiction over absent plaintiff class members and, if a court fails to obtain personal jurisdiction over the absent plaintiffs, the judgment is not binding on those plaintiffs.[18] Moreover, even if members of the "opt out" group are *arguably* bound by our decision, Bilda does not explain why the issue is properly before us, rather than an issue to be litigated, if at all, by unnoticed plaintiffs if they file suit.

¶ 56.    Therefore, Bilda has not demonstrated that we need to address the merits of his assertion that the circuit court erroneously failed to order notice to unnamed plaintiffs.

¶ 57.    Turning to the merits of Bilda's argument that the circuit court was required to give notice, we note that the parties dispute several aspects of the legal

---

[18] As support for this legal assertion, Bilda cites *Brown v. Ticor Title Insurance Co.*, 982 F.2d 386 (9th Cir. 1992), and *Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995).

analysis we should apply.[19] The parties' legal arguments leave us with questions that can be resolved only by ordering additional briefing or engaging in extensive independent research. We decline, however, to order additional briefing or independently explore the issue because, even if we were to adopt the approach advanced by Bilda himself, we would deny the motion.

██

¶ 58.   In class action suits, due process requires that courts provide absent plaintiffs notice and the opportunity to opt out of the case when the suit is "wholly or predominately for money judgments." *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 n.3 (1985). Bilda argues that the claim here is "wholly or predominately for money judgments."[20]

¶ 59.   Bilda's argument assumes that one obtainable remedy is a large payment by the County to the retirement system to offset prior, and perhaps projected, payouts caused by the challenged pension en-

---

[19] Both parties spend considerable time disputing various aspects of the federal class action rule, FED. R. CIV. P. 23. Bilda characterizes the circuit court's decision as having been "based solely on [Rule 23]." However, it is clear that the circuit court did not *rely* on Rule 23, but instead based its decision on whether notice and opt-out rights were required primarily on state law and due process considerations. Further, Bilda's argument here that notice and opt-out rights were required is based on due process, not on a violation of Rule 23. Bilda, in fact, argues that Rule 23 is not relevant to the question before us.

[20] Bilda also argues that, even if notice and the opportunity to opt out were not constitutionally *required,* the circuit court still had the "authority" to order notice to absent class members. Bilda bases this argument on the federal class action rule, FED. R. CIV. P. 23(d)(2). That section of Rule 23 allows a circuit court to order notice even when not required to do so under Rule 23. We do not consider Bilda's argument on this point because it is undeveloped.

hancements. Bilda assumes this remedy is properly labeled a "money judgment" for purposes of analyzing whether notice is required. Building on this assumption, Bilda argues that we should apply the test adopted by the federal Second Circuit Court of Appeals in *Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 164 (2d Cir. 2001).[21] In *Robinson*, the court concluded that injunctive or declaratory relief predominates, rather than relief in the form of a money judgment, if "reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought" even in the absence of monetary relief. *Id.* According to Bilda, no members of the plaintiff classes would "have pursued [a] claim only for the declaratory relief requested without the possibility of monetary damages." We disagree.

¶ 60.   One obvious goal of Bilda's suit is to have the challenged enhancements declared void or unconstitutional so that these additional payouts cease. If Bilda had obtained a declaratory judgment that the ordinance is invalid, the judgment would stop future impermissible takings, thus protecting the viability of the retirement system. A reasonable plaintiff would have brought suit to effect that result.[22]

---

[21] The County urges us to analyze the need for notice under a different test used by the federal Fifth Circuit. Under this test, a damages claim predominates "when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998). However, because Bilda does not assert that notice was required under this test, we do not address it.

[22] Bilda cites *Eberle v. Dane County Board of Adjustment*, 227 Wis. 2d 609, 633, 595 N.W.2d 730 (1999), for the proposition that, when there has been a taking, compensation is "constitutionally required." Thus, if we understand Bilda's logic, by definition a successful suit will produce, in addition to declara-

¶ 61. Finally, Bilda's interest of justice argument lacks merit. Bilda asserts that the failure to provide notice to class members deprived him of "crucial evidence in support" of his claim and, "[a]s a result, the real controversy was never decided and a miscarriage of justice resulted." In this respect, Bilda asks that we exercise our authority to reverse the circuit court in the interest of justice under WIS. STAT. § 752.35 on the basis that the case was not fully tried. We decline the request for two reasons. First, Bilda does not suggest what evidence additional class members might have produced. Second, Bilda provides no authority for the proposition that a purpose of notice to unnamed plaintiffs is to facilitate evidence gathering.[23]

*By the Court.*—Orders affirmed.

---

tory relief, "compensation" damages and, therefore, a reasonable plaintiff would not have initiated the action in the absence of "compensation" damages. We question this logic, but in any event it misses the mark. The question under the Second Circuit's test is whether a reasonable plaintiff would bring suit if only declaratory relief is available. We conclude that the answer to this question in the instant case is yes.

[23] We note that Bilda makes several arguments without apparent relevance to the issues before us. For example, Bilda discusses the court-ordered notice to the intervenor plaintiff class when that class's attorney sought payment of legal fees. It seems, however, that the question of notice in that regard—that is, relating to whether those class members must pay legal fees—is distinct from whether notice was required regarding the merits of the case. Bilda also claims the court somehow erred in its classification of the various participants involved here. Bilda does not explain the connection between this argument and whether notice was required, and no connection is apparent.