Town of Whitewater, Respondent, vs. Town of Richmond, Appellant.

*March 12—April 7, 1931.*

*Easton Johnson* of Whitewater, for the appellant.
*Charles E. Wilson* of Elkhorn, for the respondent.

OWEN, J.   This is an action by the town of Whitewater, located in Walworth county, to recover from the town of Richmond an amount of money expended by the town of Whitewater in the repair and maintenance of a portion of a highway between the two towns which the plaintiff claims belonged to the town of Richmond to keep in repair.

It appears that as early as June 18, 1842, this town-line highway was divided by agreement between the supervisors of the two towns, whereby a portion of the highway was assigned to each town to maintain and keep in repair.   This agreement was observed by the two towns, and each town kept its portion of the town-line highway in repair, as required by the terms of that agreement, until the 28th day of August, 1923, when the respective town boards of the two towns made a redivision and reassignment of said highway.

By the terms of the latter agreement the town of Richmond was assigned a portion of the highway to keep in repair which had theretofore been maintained and kept in repair by the town of Whitewater under the agreement of 1842. The defendant town of Richmond refused to recognize or to be bound by the agreement of 1923, and failed to repair or maintain that portion of the highway so assigned to it by the agreement of 1923. This resulted in an appeal to the county board under sec. 81.14, Stats. The county board caused said portion of the highway to be placed in a condition of repair, and assessed the cost thereof to each of the towns. The amount so assessed to the town of Whitewater was placed on the tax roll and collected in taxes. It brings this action to recover the amount so assessed, claiming that under the agreement of 1923 it was the legal duty of the town of Richmond to pay the entire amount expended by the county in placing said portion of said highway in repair.

The demurrer to the answer raises the question of whether the agreement of 1923 was valid and binding upon the towns, or either of them. The impracticability of keeping a town-line highway in repair, as an administrative matter, where the said highway is divided longitudinally, is quite apparent and universally recognized. Probably for this reason the statutes of this state provided from a very early day that a town-line highway should be divided and a portion thereof assigned to each town to keep in repair, by the order laying out the highway. Thus, sec. 1273, R. S. 1878, provided that "the said supervisors, upon laying out, altering or widening such [town-line] highway, shall determine, in their order, what part of such highway shall be made and kept in repair by each town, and what share of the damages, if any, shall be paid by each; and each such town shall have all the rights and be subject to all the liabilities in relation to the part of such highway to be made or repaired by such

town, as if it were wholly located in such town." This continued to be the law until the enactment of ch. 126, Laws of 1893, where provision was made for a reapportionment in case the creation of a new town or the alteration of the boundaries of either or both of the towns resulted in an increase or diminution of the territory of either or both towns. In that event the original order was deemed vacated and required new proceedings as provided by law as if such order had not been made. It was provided that, if no apportionment could be arranged, application might be made to the circuit judge of the county for the appointment of three commissioners to make such apportionment.

The enactment of ch. 126, Laws of 1893, evidenced the legislative thought that the original order of apportionment was final, and provided that the conditions mentioned in said chapter should result in its vacation. When that resulted, express authority was given to bring about a new arrangement, and, if the town boards could not agree, then application might be made to the circuit judge for the appointment of commissioners to make the apportionment. This continued to be the law without material change until the enactment of ch. 340, Laws of 1911, when the word "may" was substituted for the word "shall," so that thereafter the law provided that the supervisors "may" instead of "shall" determine in their order what part of such highway shall be made and kept in repair by each town. This change was doubtless made so that the order laying out the highway would not be invalid if the apportionment was not made, as was held in *McKee v. Hull*, 69 Wis. 657, 35 N. W. 49, where the order failed to award damages. Said ch. 340 further provided that application might be made to the circuit judge for the appointment of commissioners to make the apportionment where such apportionment was not made in the order laying out the highway. This made it possible

to lay out a town-line highway even though the supervisors could not agree on the division.

It will thus be seen that the law at all times did and now does empower the supervisors to make this apportionment only in and by their order laying out the highway. When their power is so exercised in the order laying out the highway, "each such town shall have all the rights and be subject to all the liabilities in relation to the part of such highway to be made or repaired by such town as if it were wholly located in such town." That part of the town-line highway becomes a highway of the town to which it is assigned or apportioned as does any other highway within the town. When in 1923 the supervisors of the town of Richmond agreed to keep in repair a portion of the town-line highway belonging to the town of Whitewater to keep in repair, it was equivalent to an agreement on the part of the supervisors of the town of Richmond to keep in repair any other highway in the town of Whitewater. To enable the supervisors to thus bind the town requires express authority. Such authority is not to be found in the statutes, and inherent authority in the supervisors of the town is not to be thought of. Town officers have only such powers as are conferred upon them by statutes. Granting that there might be inherent power in the town itself to make such a division, it cannot be said that such power, if it does exist, is to be exercised by the town board. Neither is such power to be implied from the provisions of sec. 81.01, Stats., which provides that the town boards shall have the care and supervision of all highways and bridges in their respective towns, except as otherwise provided. This simply clothes them with certain authority over highways and bridges in their respective towns. It does not authorize them to bind the town with reference to highways and bridges not in their town.

Any claim which the plaintiff has against the defendant town must rest upon the agreement of 1923. This agree-

ment was void. It imposed no liability upon the defendant town. Whether the agreement of 1842 was a valid agreement need not be considered. If that agreement was valid there was no power to change it, and that imposed upon the plaintiff town the duty to keep in repair the highway in question. If that agreement was not valid, then the duty to keep the highway in repair rested upon the two towns, and the plaintiff town has paid no more than its share of the expense incurred by the county board in placing the highway in repair.

It follows that the complaint states no cause of action, for which reason if for no other the demurrer to the answer should have been overruled, as a bad answer is good enough for a bad complaint. *Watertown Milk Producers Co-op. Asso. v. Van Camp Packing Co.* 199 Wis. 379, at p. 399 (225 N. W. 209, 226 N. W. 378).

*By the Court.*—Order reversed, and cause remanded with directions to overrule the demurrer.