TOWN OF EAU GALLE, Respondent, vs. TOWN OF WATER-VILLE, Appellant.

*February 11—March 8, 1932.*

For the appellant there was a brief by *White & White* of River Falls, and oral argument by *Ferris M. White*.

*Farnham A. Clark* of Menomonie, for the respondent.

OWEN, J.  This action is brought by the town of Eau Galle, located in Dunn county, against the town of Waterville, located in Pepin county, for the purpose of obtaining a declaratory judgment establishing the rights, duties, and responsibilities of the two towns with reference to the reconstruction and maintenance of a bridge on a road between the two towns.

The road had its origin in user.  It was traveled as a highway in 1866.  Since 1873 the westerly part of the road has been maintained by the town of Waterville and the easterly part thereof by the town of Eau Galle.  The easterly portion of the road maintained by the town of Eau Galle crosses two streams.  For many years bridges have been maintained across these streams by the town of Eau Galle.  One or both of these bridges must be reconstructed.  The town of Eau Galle now questions whether it is under legal responsibility to bear all the expense of reconstructing these

bridges, and brings this action for the purpose of having its legal rights in such respect determined, it being contended by the town of Eau Galle that the expense of rebuilding these bridges should be apportioned between it and the town of Waterville. The trial court entered judgment determining that the cost and expense of the reconstruction of these bridges should be apportioned between the two towns, as provided in sec. 80.11, Stats.

The statutes of this state have always provided for the laying out of town-line highways, and where such highways are laid out pursuant to the statutes the highway must be divided and a definite portion thereof committed to each of the abutting towns for maintenance. Where that has been done, the portion of the town-line highway committed to each town becomes an integral part of the highway system of the town to which it is so allotted. *Whitewater v. Richmond*, 204 Wis. 388, 235 N. W. 773.

The highway here in question was not legally laid out. It had its origin in user, and became a public highway by virtue of the provisions of sec. 80.01 (2), Stats., which provides that "All roads not recorded which shall have been or shall be used and worked as public highways ten years or more shall be deemed public highways." In 1873, and before this road had been traveled a sufficient length of time to become a public highway, as found by the court, the supervisors of the town of Waterville and the town of Eau Galle appointed two commissioners from their respective towns to meet and determine what portion of this road should be kept in repair by each town. These commissioners met and determined that the west end of the road should be kept in repair by the town of Waterville and the east end by the town of Eau Galle, since which time each town has kept in repair the portion of the road so assigned to it without question or protest. The town of Eau Galle has

at all times since kept and maintained the easterly portion
of the road and constructed and maintained sufficient bridges
over the streams above mentioned. One of the bridges which
it appears must soon be replaced is of substantial structure,
consisting in part at least of steel resting on concrete foot-
ings. This bridge was constructed by the town of Eau
Galle at its own expense, and it was only when the recon-
struction of this bridge was imminent that, in 1929, it ques-
tioned its exclusive responsibility in the premises.

There are various principles of law which, it seems to us,
prevent the disturbing of a status that has so long existed
by the acquiescence of both towns. The law does not favor
the opening up of controversies or the disturbance of a situ-
ation or status which has so long existed. This is a policy
of the law of very broad application, the influence of which
cannot be ignored in this case. Even though this doctrine
standing alone be not conclusive of the present controversy,
it must nevertheless be kept in mind and given due weight.
It is perhaps to be regretted that our statutes have not made
more specific provisions concerning the duties of towns in
keeping a town-line road in repair where that road origi-
nated by user. The public convenience arising from, and
the necessity of, assigning definite portions of such a high-
way to one of the abutting towns for the purposes of keeping
the same in repair, and of making it responsible therefor, is
recognized by the statutes. But the statutes bearing upon
the subject relate only to town-line highways legally laid
out. It is rather creditable to the spirit of fairness and con-
cession on the part of the people which has enabled the towns
of our state to deal with such situations in the absence of
statutory provisions, as is to be inferred from the fact that
very few controversies of this nature have received the con-
sideration of this court.

We have already said that we think various applicable
principles of law prevent a disturbance of the relations be-

tween these two towns with reference to this road which have existed for a period of more than fifty-five years. To start at the beginning, we may remark that whether that portion of the road in question is not a highway belonging to the town of Eau Galle to keep in repair by virtue of sec. 80.01 (2) is worthy of serious consideration. This road having its inception in user, acquires its present status as a public highway because it has been used and worked for ten years. The only town that worked it was the town of Eau Galle. No other public funds than those of the town of Eau Galle were ever expended on it. The town of Waterville never expended any funds on this portion of the highway. In view of the fact that in 1873 this road was not a public highway so far as the proof discloses, and that by an arrangement between the two towns, whether lawful or not, each town accepted a portion of the highway for purposes of travel, the road became a public highway by virtue of the expenditure of these funds, and it is a little difficult to see why that portion of the road worked by the town of Eau Galle did not become a highway of that town, and that portion worked by the town of Waterville a highway of the latter town. This would be the result of the apportionment of a town-line highway legally laid out, and, as the statute does not recognize any other town-line highway as a legal institution, it seems rather apparent that the portion of the highway in question became a highway of the town of Eau Galle by reason of the fact that the public funds of the town of Eau Galle alone were expended in its repair and maintenance. Neither town was responsible in the beginning for the presence of this road upon the town line, but each consented to take over a portion of it and deal with it as though it was one of its own highways.

But if we be wrong in this suggestion, and if this highway should be treated as a town-line highway, we think that a further consideration imposes upon the town of Eau Galle

the duty of keeping this highway in repair.  Granting that this was a town-line highway in 1873, the towns themselves had the implied power to divide the highway and each assume a portion of the highway to keep in repair.  This because of the recognized convenience and necessity in dealing with a town-line highway.  This power is expressly recognized by sec. 80.11 (7) and (8) of the Statutes.  Sub. (7) speaks of bridges on a highway between two towns, which highway has become such by reason of having been used and worked, and "which bridge has not been assigned to either of the adjoining towns."  As there is no provision in the statutes for the  assigning of such a bridge to either of the towns, the legislature here plainly recognizes the power of the towns to make an assignment of the bridge independent of any statutory authorization, and sub. (8) speaks of the maintenance of a bridge located on a town, village, or city boundary where no provision has been made by statute or *agreement*.  We have no difficulty in arriving at the conclusion that towns have implied or inherent power to arrange for the convenient maintenance of highways such as we are here considering, and that the natural and reasonable arrangement under such circumstances is for each town, by agreement with the other town, to take over or assume the repair of a specific portion of the highway, just as the statutes require shall be done to consummate the legal laying out of a town-line highway.  When we speak of the town itself assuming a portion of the highway to keep in repair, we mean the town acting through its town meeting.  Such a result would necessarily be brought about by negotiations and, as a practical proposition, some one acting in behalf of each town would have to negotiate and agree upon a proposition of division to be submitted to the town meetings of the respective towns.  If such a proposition were to come before the town meeting of each town, and

each agreed thereto, the result would be the same as though the town-line highway had been legally laid out and a portion thereof assigned to each town as provided by the statute.

In this case there was no formal action of the town meeting ratifying the determination of the commissioners, but we have a uniform acquiescence in the determination of the commissioners for a period of fifty-five years, during which time each town acted in conformity with the determination of the commissioners. If we assume the power of the town to agree to a division of the highway, and construe the determination of the commissioners as a contract, there is no doubt of the power of the town to ratify the contract, provided it is done with full knowledge of the facts. *Kneeland v. Gilman,* 24 Wis. 39; *Koch v. Milwaukee,* 89 Wis. 220, 62 N. W. 918; *Neacy v. Drew,* 176 Wis. 348, 187 N. W. 218.

It is claimed by the respondent that this doctrine cannot be applied in the present case because the town did not know that the act of the commissioners was illegal, and that the conduct of the town in assuming the repair of the highway was due to a misunderstanding of the facts, such facts being that the commissioners had no authority to act. The premise that the commissioners had no authority to act is based upon the provision that no one acting for the town has authority to make a division of a town-line highway except the supervisors, and they, formerly, were required to act at the time of laying out the highway. However, this is not a legally laid out town-line highway. This highway came into existence as a legal highway by user. The power of the towns to divide the highway was implied, and quite apart from the express power conferred upon the supervisors at the time of laying out the highway. The commissioners appointed represented and acted for their respective towns in the matter of determining which portion of the highway

should be kept in repair by each town. Their negotiations might have been formally ratified at the respective town meetings, but they could as well have been ratified by acquiescence. The towns were in full possession of all the facts necessary. They knew of the existence of this town highway, they knew that their representatives had agreed upon a division, and, so knowing, each town continued for a period of fifty-five years to keep in repair its proportion of the highway so assigned to it. This we consider a complete ratification of the determination made by the commissioners.

This controversy is closely analogous to a boundary-line dispute. The question is whether this highway is within the dominion and jurisdiction of the town of Eau Galle,— whether it is a part of the system of highways of the town of Eau Galle. In *Rhode Island v. Massachusetts,* 4 How. (U. S.) 591, at p. 639, it is said:

"No human transactions are unaffected by time. Its influence is seen on all things subject to change. And this is peculiarly the case in regard to matters which rest in memory, and which consequently fade with the lapse of time, and fall with the lives of individuals. For the security of rights, whether of states or individuals, long possession under a claim of title is protected. And there is no controversy in which this great principle may be involved with greater justice and propriety than in a case of disputed boundary."

In *Indiana v. Kentucky,* 136 U. S. 479, at p. 510, 10 Sup. Ct. 1051, it is said:

"It is a principle of public law universally recognized, that long acquiescence in the possession of territory and in the exercise of dominion and sovereignty over it is conclusive of the nation's title and rightful authority."

This alone is sufficient to impose upon the town of Eau Galle responsibility for the reconstruction of this bridge. It would be poor public policy to permit the status which has received the acquiescence of the contending parties for a period of fifty-five years to be now disturbed and made the

subject of prolific controversies. No doubt there are many other highways in the state having much the same history as this highway, where the towns have by agreements assumed to keep a portion of a town-line road in repair, and have in good faith acquiesced in and acted under such arrangements. Such arrangements, though seemingly equitable in the beginning, may result in an inequality of burden by reason of erosion, floods, or other changes wrought by time. If the towns may now at this late day repudiate such long, enduring arrangements, a flood of controversy and litigation is not beyond the probabilities. The purpose sought to be attained by the law would be poorly served by permitting a disturbance of the status in which the neighboring towns have acquiesced for so long a time.

Our conclusion is that the bridges in controversy belong to the town of Eau Galle to keep in repair, and the judgment should be reversed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment in accordance with this opinion.