COURT OF APPEALS
DECISION
DATED AND FILED

May 2, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1611**

STATE OF WISCONSIN

Cir. Ct. No. **2021CV57**

IN COURT OF APPEALS
DISTRICT IV

TOWN OF GREEN GROVE,

PLAINTIFF-APPELLANT,

V.

TOWN OF COLBY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Clark County: LYNDSEY A. B. BRUNETTE, Judge. *Affirmed.*

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

¶1 NASHOLD, J. The Town of Green Grove ("Green Grove") appeals a circuit court order granting summary judgment in favor of the Town of Colby ("Colby") (collectively, "the Towns"). For the reasons stated below, we affirm.

## BACKGROUND

¶2      The following facts are derived from the parties' summary judgment materials and are undisputed for purposes of summary judgment unless otherwise noted.

¶3      Meridian Avenue is a town line highway[1] that runs north to south on the border between Green Grove and Colby in Clark County.  Green Grove lies to the west, Colby to the east.  There is a bridge where Meridian Avenue crosses the East Fork of the Popple River.

¶4      Green Grove replaced the bridge in 2019, and Colby refused to share the replacement costs.  Green Grove then filed suit, alleging that Colby was obligated to share the costs pursuant to WIS. STAT. § 82.23 (2021-22).[2]  The parties filed cross-motions for summary judgment, which the circuit court denied.  After Green Grove discovered an agreement between the Towns from 1929 ("the 1929 agreement"[3]), which stated that the Towns were jointly responsible for maintaining the bridge, Green Grove again filed for summary judgment.  The court denied Green Grove's motion, and instead granted summary judgment in

---

[1] "'Town line highway' means a highway that runs on or across the boundary line between a town and another town, a village, or a city."  WIS. STAT. § 82.01(9).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] WISCONSIN STAT. § 82.23 states, "Unless otherwise provided by statute or agreement, every highway bridge on a city, village, or town boundary shall be repaired and maintained by any adjoining municipality in which the bridge is located.  The cost of repairs and maintenance shall be paid by the adjoining municipalities in proportion to the last equalized valuation of the property in the adjoining municipalities."

[3] As we later explain, the parties dispute how this agreement should be characterized.  We refer to it as "the 1929 agreement," which is consistent with our analysis below.

favor of Colby.[4] The court concluded that, pursuant to a "Road Maintenance Agreement for Meridian Avenue" between the Towns from 2010 ("the 2010 agreement"), Green Grove is entirely responsible for the bridge's replacement costs. Green Grove appeals.[5]

## STANDARD OF REVIEW

¶5 We review summary judgment de novo, using the same methodology as the circuit court. *Bauer v. Wisconsin Energy Corp.*, 2022 WI 11, ¶11, 400 Wis. 2d 592, 970 N.W.2d 243. Summary judgment is appropriate when the summary judgment materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶6 This appeal also requires us to interpret contracts. "The interpretation of an unambiguous contract presents a question of law" that we review de novo. *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476. "Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look

---

[4] The circuit court did so pursuant to WIS. STAT. § 802.08(6), which states, "If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor."

[5] Colby's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), because briefs are now electronically filed in PDF format and electronically stamped with page numbers when they are accepted for e-filing. As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent." *Id.*, ¶33. When a contract is ambiguous and the extrinsic evidence "is undisputed and but one inference can be reasonably drawn therefrom, a question of law is presented." *Cutler-Hammer, Inc. v. Industrial Comm'n*, 13 Wis. 2d 618, 632, 109 N.W.2d 468 (1961).

¶7 This appeal further involves statutory interpretation, which we review de novo. *Marx v. Morris*, 2019 WI 34, ¶21, 386 Wis. 2d 122, 925 N.W.2d 112.

## DISCUSSION

¶8 As stated, Green Grove brought this action under WIS. STAT. § 82.23, alleging that Colby is required to share the costs of replacing the bridge pursuant to that provision. Section 82.23 states:

> Unless otherwise provided by statute or agreement, every highway bridge on a city, village, or town boundary shall be repaired and maintained by any adjoining municipality in which the bridge is located. The cost of repairs and maintenance shall be paid by the adjoining municipalities in proportion to the last equalized valuation of the property in the adjoining municipalities.

The issue on appeal is whether an agreement "provide[s]" "otherwise," rendering § 82.23's default apportionment of costs inapplicable. As we explain below, we conclude that the 2010 agreement provides otherwise—specifically, that Green Grove is solely responsible for the costs of replacing the bridge—and we reject Green Grove's arguments to the contrary. We further conclude that Green Grove fails to show that the 1929 agreement mandates a different result.

*I. The 2010 agreement controls.*

¶9      In 2010, Green Grove and Colby entered into a "Road Maintenance Agreement for Meridian Avenue." It states that "an agreement was reached by both Town Boards whereby the Town of Colby will maintain one mile of Meridian Avenue from Cloverdale Road to Popple River Road. The Town of Green Grove will maintain 1.64 miles of Meridian Avenue from Cloverdale Road to County Road N." In other words, under the 2010 agreement, Colby is to maintain the part of Meridian Avenue south of where it intersects with Cloverdale Road, and Green Grove is to maintain the part of Meridian Avenue north of the Cloverdale Road intersection. The parties do not dispute that the bridge is located on the part of Meridian Avenue that Green Grove is responsible for maintaining under the 2010 agreement.

¶10      Under the 2010 agreement, Green Grove and Colby also agreed that Green Grove will "bill … Colby for .32 miles of road maintenance," to account for the fact that Green Grove is responsible for maintaining more than half of Meridian Avenue along the Towns' shared border. The 2010 agreement reflects an intent to make the Towns' respective road maintenance obligations consistent with how they are designated on the "Wisconsin Department of Transportation Mileage Maps" ("Mileage Maps"), according to which "[t]he southern 1.32 miles belong to the Town of Colby and the northern 1.32 miles belong to the Town of Green Grove."[6]

---

[6] The parties do not explain what Mileage Maps are, but it appears that these maps refer to the plats that are filed by municipalities and used by the Department of Transportation to determine the amount of transportation aids provided to the municipalities. *See* WIS. STAT. § 86.302 ("[T]he board of every town … shall file with the [D]epartment [of Transportation] … every year, a certified plat of the municipality … showing the highways under its jurisdiction and

(continued)

¶11 Before the 2010 agreement, the Towns' respective road maintenance obligations were reversed: Colby maintained Meridian Avenue north of Cloverdale Road, Green Grove maintained Meridian Avenue south of Cloverdale Road, and Green Grove reimbursed Colby for maintaining .32 miles of Meridian Avenue north of the Cloverdale Road intersection.

¶12 Colby argues that because the bridge is on the part of Meridian Avenue that Green Grove is responsible for maintaining under the 2010 agreement, Green Grove is responsible for the costs of replacing the bridge pursuant to that agreement. As support, Colby relies on our supreme court's holding in *Town of Pella v. Town of Larabee*, 164 Wis. 403, 160 N.W. 161 (1916).

¶13 *Pella* similarly involved a dispute between neighboring towns regarding who would bear the costs of replacing a bridge on a town line road. *Id.* An agreement between the towns of Pella and Larabee stated that Pella was responsible for maintaining the stretch of road that contained the bridge, but the agreement did not specifically allocate the responsibility for maintaining the bridge. *Id.* at 404. Pella maintained the bridge for 16 years, but when the bridge had to be replaced following a flood, Pella sued Larabee to recover half the replacement costs. *Id.* Our supreme court concluded that Pella was responsible for the bridge replacement costs, reasoning that such costs must be borne by the

---

the mileage thereof to be open and used for travel …. The [D]epartment [of Transportation] may use the plats in making computations of transportation aids. One-half of the mileage of highways on boundary lines shall be considered as lying in each municipality or county."). The parties do not dispute that the bridge is located on the part of Meridian Avenue that belongs to Green Grove according to the Mileage Maps—that is, the bridge is not located on the .32-mile portion of Meridian Avenue north of the Cloverdale Road intersection that, under the 2010 agreement, "belongs" to Colby but is maintained by Green Grove.

6

town that maintains the portion of the road that contains the bridge. *Id.* at 405. In so concluding, our supreme court adopted the reasoning of the circuit court, the latter of which concluded:

> The bridge as it was in 1897 must have been in the minds of the supervisors of the two towns when the highway was divided, though it was not mentioned. If it then had been deemed of importance enough to mention, the supervisors could have apportioned the expense of maintaining it …. That the bridge was not then mentioned and no provision made for its joint maintenance at least tends to warrant the conclusion that it was included in the first 120 rods of the highway which Pella was to maintain, because of the small cost of maintaining it.

*Id.*

¶14     Colby argues that under *Pella*, Green Grove is solely responsible for replacing the bridge because, pursuant to the 2010 agreement, Green Grove is responsible for maintaining the portion of Meridian Avenue on which the bridge is located. Thus, Colby contends that WIS. STAT. § 82.23's default joint apportionment does not apply because the 2010 agreement provides otherwise.[7] We agree, and conclude that Green Grove's attempts to distinguish *Pella* lack merit.

---

[7] Colby also relies on attorney general opinions from 1926 and 1927, which are consistent with *Town of Pella v. Town of Larabee*, 164 Wis. 403, 160 N.W.2d 161 (1916). *See Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶41, 341 Wis. 2d 607, 815 N.W.2d 367 ("The opinions of the Attorney General are not binding on the courts but may be given persuasive effect."). The attorney general opinions that Colby cites address facts similar to those here: two neighboring towns entered into an agreement regarding the maintenance of a town line highway, whereby they were each responsible for maintaining different sections of the highway. 15 Wis. Op. Att'y Gen. 182-83 (1926); 16 Wis. Op. Att'y Gen. 646-47 (1927). The agreement was silent regarding the bridge. 16 Wis. Op. Att'y Gen. 646 (1927). The attorney general opinions conclude that the town that was responsible for maintaining the part of the highway on which the bridge was located was responsible for repairing and reconstructing the bridge. 15 Wis. Op. Att'y Gen. 182-83 (1926); 16 Wis. Op. Att'y Gen. 647 (1927).

¶15    Green Grove argues that *Pella* is "a highway order case" that does not bear on the interpretation of the 2010 agreement, which is a contract. Although the circuit court in *Pella* referred to "the order dividing the highway," our supreme court consistently referred to the "agreement" between the two towns. *Pella*, 164 Wis. at 404-05.  Additionally, Green Grove does not argue why this distinction would matter for purposes of applying the holding from *Pella* on which Colby relies—namely, that, unless otherwise stated in an agreement, the town responsible in the agreement for maintaining a part of a highway containing a bridge is also responsible for maintaining and replacing that bridge.

¶16    Green Grove also argues that *Pella* is distinguishable because in *Pella*, the town of Pella had historically maintained the bridge on the stretch of road that was allocated to it in the agreement.  Green Grove asserts that the parties here, pursuant to the 1929 agreement, have a history of jointly maintaining the bridge.  However, the *Pella* court looked at the parties' conduct after they entered into the agreement.  *Id.*  As discussed in greater detail below, after the parties in this case entered into the 2010 agreement, Green Grove solely maintained the bridge.  As to the parties' conduct before the 2010 agreement, Green Grove's assertion of a history of joint maintenance of the bridge is not supported by the summary judgment materials.  Those materials show that prior to entering the 2010 agreement, going back to at least 1985, Colby solely maintained the bridge. The facts here are thus consistent with those in *Pella*:  in both instances, the town that was responsible for maintaining the part of the highway that contained the bridge also maintained the bridge.  *Id.*

¶17    Thus, Green Grove does not persuasively argue that *Pella* is distinguishable.    Furthermore, as we next explain, even if *Pella* were distinguishable as a "highway order case," under ordinary principles of contract

law, we would reach the same result—namely, that, under the 2010 agreement, Green Grove is responsible for the costs of maintaining the bridge.

¶18 As mentioned earlier, we consider extrinsic evidence when a contract is ambiguous, **Town Bank**, 330 Wis. 2d 340, ¶33, and the parties appear to agree that the 2010 agreement is ambiguous: Green Grove explicitly argues that the 2010 agreement's "silence as to bridges is ambiguous," and Colby argues that the circuit court properly considered extrinsic evidence when interpreting the 2010 agreement.[8] As set forth below, the summary judgment materials contain undisputed extrinsic evidence showing that the parties intended for Green Grove to be responsible for the costs of maintaining and replacing the bridge under the 2010 agreement.

¶19 The summary judgment materials establish the following undisputed facts. Before entering the 2010 agreement, when Colby maintained the part of Meridian Avenue that includes the bridge, Colby maintained the bridge and did not seek contributions from Green Grove for the costs of doing so. The Towns intended for the 2010 agreement to flip their maintenance obligations regarding Meridian Avenue, and, consistent with this mutual intent, before entering the 2010 agreement, Green Grove asked Colby for copies of bridge reports for the prior several years.

---

[8] Green Grove argues that the circuit court should not have considered extrinsic evidence without first determining whether the 2010 agreement is ambiguous, but that is an argument that we need not address because our review on summary judgment is de novo. S*ee **Bauer v. Wisconsin Energy Corp.**, 2022 WI 11, ¶11, 400 Wis. 2d 592, 970 N.W.2d 243. On our de novo review, and for purposes of addressing Green Grove's argument that the holding in **Pella** does not apply here, we accept the parties' apparent positions that the 2010 agreement is ambiguous.

¶20    After entering the 2010 agreement, Green Grove's town clerk emailed the office manager at the Highway Department of Clark County to obtain information regarding the bridge and when it might need to be replaced, saying that "the bridge on Meridian Avenue seems to be in a state that needs watching for possible replacement, now that we know it belongs to the Town of Green Grove." Green Grove also began paying for the annual inspection of the bridge, including all labor and equipment, and did not ask Colby to contribute.

¶21    In addition, Mark Klein, who served as Green Grove's town board chairperson from 2007 or 2009 until 2019, testified at a deposition to the following. When Green Grove first began seeking federal aid for the replacement of the bridge in 2013, he did not consult with Colby's town board chairperson about the decision to replace the bridge. The replacement of the bridge was a topic at multiple Green Grove town meetings around this time, during those meetings there was no discussion about Colby contributing to the bridge replacement costs, and Green Grove assumed that Green Grove was entirely responsible for replacing the bridge. While Klein was Green Grove's town board chairperson, up until April 2019, he had no discussions with any members of Colby's town board regarding the bridge, and to his knowledge no one from Green Grove's town board had ever contacted Colby town board members to express an understanding that Colby would contribute to the costs of replacing the bridge.

¶22    Also, according to the minutes from a Green Grove town meeting in 2015, Green Grove's town board approved an agreement regarding the funding for the bridge's replacement, under which Green Grove would pay for the replacement costs of the bridge: "The state put together an agreement to help with funding for the Meridian Ave bridge that needs replacing, with the state paying 80% and the town paying the rest." The minutes do not reflect that any mention

was made of Colby sharing the costs of replacing the bridge. Green Grove first sought to obtain from Colby a contribution to the costs of replacing the bridge in August 2019, after a new town board chairperson, David Frederick, was elected.

¶23 None of these facts are disputed, and they demonstrate an understanding between Green Grove and Colby that, under the 2010 agreement, Green Grove is responsible for maintaining and replacing the bridge.

¶24 Green Grove makes a number of arguments to the contrary, all of which we reject. First, Green Grove argues that there is a factual dispute about when Colby first learned that the bridge was being replaced. Frederick avers in an affidavit that he told Colby's town board chairperson in 2016 which engineering firm Green Grove had hired for the bridge project, a conversation that Colby's town board chairperson avers in an affidavit never occurred. But whether this conversation actually occurred is not a material fact. Viewing this in the light most favorable to Green Grove, as we must on summary judgment, even if we assume that Colby's town board chairperson was aware in 2016 of which engineering firm Green Grove hired, that does not show that Green Grove and Colby intended to share the replacement costs of the bridge.

¶25 Second, Green Grove argues that to conclude that Green Grove is entirely responsible for maintaining the bridge under the 2010 agreement requires us, in effect, to improperly rewrite the 2010 agreement by inserting a bridge provision. We disagree. The 2010 agreement allocates to Green Grove the responsibility for maintaining the portion of Meridian Avenue that includes the bridge, which, consistent with all of the uncontested extrinsic evidence discussed above, allocates to Green Grove the responsibility for maintaining and replacing the bridge as part of the allocated portion of Meridian Avenue.

11

¶26 Third, Green Grove argues that it is not solely responsible for the costs of replacing the bridge because of language in the 2010 agreement that states, "This contract does not include any major road upgrades or culvert replacement. If major upgrades need to be undertaken, it will be the responsibility of the Town of Colby to provide those upgrades or culvert replacement, and inform the Town of Green Grove of such work in progress." It is clear from context, however, that this language applies specifically to the Towns' agreement regarding the .32 miles of Meridian Avenue north of the intersection with Cloverdale Road. The 2010 agreement first explains why the parties entered into the agreement—so that the Towns' maintenance responsibilities for Meridian Avenue are consistent with the Wisconsin Department of Transportation's Mileage Maps—and then states that Colby will maintain the southern 1 mile of Meridian Avenue and that Green Grove will maintain the northern 1.64 miles. After that, the 2010 agreement states:

> The Town of Green Grove will bill the Town of Colby for .32 miles of road maintenance, based on the appropriate yearly road aid formulas.
>
> Now therefore, the parties hereby agree, effective July 1[,] 2010, to the following:
>
> 1. Town of Colby agrees to pay the Town of Green Grove for maintenance of Meridian Avenue from the corner of Cloverdale Road north, .32 miles subject to the following conditions:
>
>    a. Addition of road granite and grading as needed.
>
>    b. Clearing of brush in ditches to maintain visibility and proper drainage.
>
>    c. Clearing of snow and ice during winter months.

2. The Town of Green Grove agrees to provide their services to the best of their ability, and to abide by this contract between the two parties.

3. This contract does not include any major road upgrades or culvert replacement. If major upgrades need to be undertaken, it will be the responsibility of the Town of Colby to provide those upgrades or culvert replacement, and inform the Town of Green Grove of such work in progress.

The language that Green Grove quotes is the last of three numbered items that apply specifically to the agreement between the two Towns that Green Grove will maintain the .32 miles north of the Cloverdale Road intersection, for which Colby will reimburse Green Grove. The three numbered items immediately follow the language stating that Green Grove will bill Colby for .32 miles of road maintenance.

¶27 These numbered items also state that Green Grove will provide maintenance to the best of its ability, and they make Colby responsible for major upgrades and culvert replacement. Although this makes sense regarding the parties' agreement as to the .32 mile stretch of Meridian Avenue that Green Grove will maintain, for which Colby will reimburse Green Grove, this would not make sense regarding the parties' larger maintenance agreement for the rest of Meridian Avenue. For example, under Green Grove's reading, Colby would be responsible for major road upgrades anywhere on Meridian Avenue, even on the northern 1.32 miles that Green Grove was otherwise supposed to maintain and that the Mileage Maps show belong to Green Grove. In addition, whereas the 2010 agreement generally refers to "this agreement," the three numbered list items regarding the maintenance of the .32-mile part of Meridian Avenue refer to "this contract," thereby distinguishing between the larger "agreement" regarding the Towns' respective responsibilities for all of Meridian Avenue, and the more

specific "contract" regarding the .32-mile part of Meridian Avenue north of the intersection with Cloverdale Road.[9]

¶28    Fourth, Green Grove argues that "[s]ome of [the extrinsic evidence] is innocuous; some of it does not necessarily speak on behalf of the party, Green Grove; and some of this is out of Green Grove's hands." However, Green Grove does not develop this argument—that is, Green Grove does not identify which evidence cannot be considered and for which reason, and it provides no supporting legal authority. Accordingly, we do not address this argument. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating that we need not address undeveloped arguments or arguments that are unsupported by references to legal authority).

¶29    Finally, Green Grove argues that the administrative paperwork for the Wisconsin Department of Transportation's Local Bridge Program "is not legally relevant." Green Grove appears to argue that the circuit court erred by considering: (1) the fact that Green Grove listed itself as the owner of the bridge when it submitted its application to replace the bridge, and (2) the fact that Green Grove did not demand that Colby pay for a share of the bridge until after the

---

[9] We observe that Frederick—who, before becoming Green Grove's town board chairperson, served as a member of Green Grove's town board, and who signed the 2010 agreement in that capacity—avers in an affidavit submitted with Green Grove's second motion for summary judgment that he "ha[s] never understood the [2010] [a]greement to mean that Green Grove would replace the bridge at Green Grove's expense without any contribution from Colby." Instead, he avers that he "ha[s] always understood that the [a]greement is for Colby to pay Green Grove for performing basic road maintenance such as adding and grading gravel, brushing, and snow removal on a 0.32 mile length of Meridian Avenue." However, as explained above, this understanding of the 2010 agreement is inconsistent with the terms of the agreement, and in any event, we do not consider conclusions of law asserted in affidavits. ***Bilda v. Milwaukee County***, 2006 WI App 159, ¶48, 295 Wis. 2d 673, 722 N.W.2d 116 ("Affidavits which contain … conclusions of law must be disregarded.").

bridge was completed, which Green Grove argues is attributable to how the Local Bridge Program is administered. That the circuit court considered these facts is inconsequential because our review is de novo, and we do not rely on them on appeal.

*II. The 1929 agreement does not control.*

¶30    Green Grove argues that, as a result of the 1929 agreement, Green Grove and Colby are jointly responsible for the costs of replacing the bridge. We disagree.

¶31    As mentioned above, after the circuit court denied the parties' initial cross-motions for summary judgment, Green Grove discovered an entry in its official record book from 1929. The entry states:

> [W]e the undersigned town boards of the towns of Green Grove and Colby at a meeting of said towns held in the town hall in the town of Green Grove on June 19[,] 1929[,] do agree and order that the town line road between said towns be divided as follows in regards to maintenance and upkeep beginning at the South East corner of the town of Green Grove and the South West corner of the town of Colby thence running North on said line we allot to the town of Green Grove the first mile on said line to maintain and the next mile to the town of Colby to maintain[,] *the Bridges still be maintain[ed] as before jointly of both towns*[.]
>
> This agreement to take effect immediately[.]

(Emphasis added.)

¶32    Green Grove argues that this entry is a type of "highway order" under WIS. STAT. § 82.21 and its predecessor WIS. STAT. § 80.11 (1929) that can only be modified under that statute, and that it thus could not be modified by the

15

subsequent 2010 agreement.[10]  Alternatively, Green Grove argues that even if the 1929 entry is an agreement rather than a highway order, the agreement's allocation of responsibility for maintaining the bridge still controls because the 2010 agreement is silent regarding maintenance of the bridge specifically.  We address, and reject, each argument in turn.[11]

> A. *The 1929 agreement is not an order issued pursuant to* WIS. STAT. *§ 80.11.*

¶33     Green Grove argues that the 1929 agreement is what Green Grove alternatively labels "a highway order," an "apportionment order," or "an apportionment highway order," issued pursuant to WIS. STAT. § 80.11 (1929).  As a result, Green Grove argues, the 1929 agreement can only be modified by that statute, meaning that it could not be modified by the 2010 agreement.  In contrast, Colby characterizes the 1929 entry in Green Grove's official record book for 1929 as "at best, nothing more than an 'agreement' that 'divided' responsibilities" for Meridian Avenue.  We conclude that Green Grove has not shown on summary judgment that the 1929 agreement is an order under § 80.11 (1929).

¶34     In 1929, town boards issued highway orders to lay out, alter, widen, or discontinue highways.  *See* WIS. STAT. § 80.07 (1929) ("Whenever the [town] supervisors shall lay out, alter, widen or discontinue any highway they shall make

---

[10]  The parties do not dispute that WIS. STAT. § 82.21 and WIS. STAT. § 80.11 (1929) are substantively similar.

[11]  Green Grove also argues that the 1929 order "cannot be challenged as evidence." Because Colby does not "challenge[]" the 1929 agreement "as evidence," we do not address this argument.

and sign an order therefor ….").[12]  Besides being laid out in highway orders, highways may also be established by "user."  *See **Town of Muskego v. Town of Vernon***, 19 Wis. 2d 159, 119 N.W.2d 474 (1963) (referring to highways not laid out in highway orders as having their "origins in user"); WIS. STAT. § 80.01(2) (1929) ("All roads not recorded which shall have been or shall be used and worked as public highways ten years or more shall be deemed public highways …."). Highway orders for town line highways could designate which town was responsible for which part of the town line highway.  WIS. STAT. § 80.11(3) (1929) ("[The town supervisors], upon laying out, altering or widening [a town line] highway may determine, in the [highway] order, what part of such highway shall be made and kept in repair by each town …..").  Under certain circumstances, maintenance responsibilities for town line highways could be reapportioned after the highway order for the town line highway had been issued.  In 1929, § 80.11(4) stated:

> If by any change of the boundaries of either or both such towns the territory of either shall be increased or diminished, or in the event a portion of said town line highway is or has been taken over by the state or county under the state or county highway system, or if a new town or village be formed out of a part of the territory of either or both of said towns, having a portion of such town line highway within its borders, that part of such order fixing their liabilities shall be deemed vacated, and a majority of the supervisors of each such town shall, before the time for making the next tax roll, meet together with a majority of the supervisors of such new town or, with the president of such village, and all of them when so convened shall, if they can agree, make a new order apportioning the liabilities on account of such highway ….

---

[12] A "highway order" is currently defined as "an order laying out, altering, or discontinuing a highway or a part of a highway."  WIS. STAT. § 82.01(3).

*See also* **Town of Whitewater v. Town of Richmond**, 204 Wis. 388, 392, 235 N.W. 773, 774 (1931) ("[T]he law at all times did, and now does, empower the [town] supervisors to make [an] apportionment [of a town line highway] only in and by their order laying out the highway.").

¶35    There are thus a limited number of circumstances under which Green Grove and Colby could have, in 1929, apportioned maintenance responsibilities for Meridian Avenue pursuant to WIS. STAT. §80.11 (1929).  As stated, they could have apportioned the maintenance responsibilities for Meridian Avenue in a highway order laying out, altering, widening, or discontinuing Meridian Avenue.  *See* § 80.11(3) (1929).  However, the 1929 agreement does not purport to lay out, alter, widen, or discontinue Meridian Avenue.  Indeed, the parties do not dispute that Meridian Avenue existed as far back as 1892, and Green Grove concedes that Meridian Avenue has never been altered or discontinued.

¶36    Otherwise, if Green Grove and Colby had earlier issued a highway order that apportioned maintenance responsibilities, they could have reapportioned those responsibilities if the boundaries of Green Grove or Colby changed, if a portion of Meridian Avenue became a state or county highway, or if a new town or village formed within Green Grove or Colby that contained a part of Meridian Avenue.  *See* WIS. STAT. § 80.11(4) (1929).  However, Green Grove does not identify any evidence in the summary judgment materials showing that Meridian Avenue was ever initially apportioned in a highway order, nor does Green Grove identify evidence showing that any of the circumstances that would allow Meridian Avenue to be reapportioned pursuant to § 80.11(4) (1929) preceded the 1929 agreement.  Indeed, Green Grove concedes that "there is no record of what scenario occurred in 1929," and instead argues that it does not matter.

¶37    Green Grove argues that it does not matter because "[t]here was no other legal authority in existence in 1929 for the creation of the 1929 Order other than [WIS. STAT.] § 80.11 (1929)."  As a result, Green Grove argues, "the only possible conclusion" is that the 1929 agreement is an apportionment order that was issued pursuant to § 80.11 (1929).

¶38    In support of this argument, Green Grove cites *Whitewater*.  There, the towns of Whitewater and Richmond entered into an agreement in 1842 that apportioned parts of a town line highway for each town to maintain.  *Whitewater*, 204 Wis. 2d 388.  The towns then entered into a subsequent agreement in 1923 that reapportioned the town line highway.  *Id.*  When Whitewater sued to enforce the 1923 agreement, our supreme court concluded that the town line highway could only be apportioned "in and by [the] order laying out the highway," and that the 1923 agreement, which did not do so, was thus void.  *Id.* at 392.  *Whitewater* does not support Green Grove's argument.  Even if the 1929 agreement could have only lawfully been created pursuant to WIS. STAT. § 80.11 (1929), the 1929 agreement here, like the agreement in *Whitewater*, would have been made without legal authority, rendering it void.

¶39    More importantly, we disagree that WIS. STAT. § 80.11 (1929) provided the only lawful means through which the Towns could have apportioned the maintenance of Meridian Avenue.  In response to Green Grove's argument that a highway order or apportionment order is the only means to apportion maintenance responsibilities of a town line highway, Colby argues that towns have freedom to contract with one another regarding maintenance, citing *Town of Eau Galle v. Town of Waterville*, 207 Wis. 389, 241 N.W. 377 (1932).  Green Grove does not address *Eau Galle* in its reply brief, which we take as a concession that Colby is correct.  *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39,

19

304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to respond in reply brief to an argument made in respondent's brief may be taken as a concession).

¶40 In *Eau Galle*, our supreme court concluded that "towns have implied or inherent power to arrange for the convenient maintenance of [a town line highway that has its origins in user]," and that "the natural and reasonable arrangement under such circumstances is for each town, by agreement with the other town, to take over or assume the repair of a specific portion of the highway." *Eau Galle*, 207 Wis. at 394. The *Eau Galle* court explained that "[t]he power of the towns to divide the highway was implied, and quite apart from the express power conferred upon the supervisors at the time of laying out the highway." *Id.* at 395. In *Eau Galle*, the court specifically rejected an argument similar to the one Green Grove raises here:

> The premise that the commissioners had no authority to act is based upon the provision that no one acting for the town has authority to make a division of a town line highway except the supervisors, and they, formerly, were required to act at the time of laying out the highway. However, this is not a legally laid out town line highway. This highway came into existence as a legal highway by user. The power of the towns to divide the highway was implied, and quite apart from the express power conferred upon the supervisors at the time of laying out the highway.

*Id.* Here, there is no evidence in the summary judgment materials that Meridian Avenue was ever laid out in a highway order. Indeed, the parties do not dispute that there is no evidence explaining how Meridian Avenue was established. Green Grove has thus failed to establish on summary judgment that the 1929 order must necessarily be an apportionment order under WIS. STAT. § 80.11 (1929).

¶41 Green Grove also appears to argue that even if the 1929 agreement is an agreement rather than an apportionment order, it was "protected by" and

20

"covered by" WIS. STAT. § 82.21(4)(d), which states: "Any written order or agreement made before August 27, 1947, by a majority of the supervisors of each town concerned, acting together, apportioning, or reapportioning a town line highway has the same effect as though made on or after August 27, 1947." Green Grove does not otherwise develop this argument, but appears to assert that under § 82.21(4)(d), pre-1947 maintenance agreements are equivalent to apportionment orders. This assertion is unsupported by the text of § 82.21(4)(d), and Green Grove provides no additional authority to support it. We reject it on that basis. *See Pettit*, 171 Wis. 2d at 646.

### B. The 2010 agreement does not leave intact the 1929 agreement's bridge provision.

¶42 Alternatively, Green Grove argues that if the 1929 agreement is not a highway order, but is instead an agreement or contract, then "the 2010 [a]greement fails because its silence as to the Bridge means that the 2010 [a]greement did not modify the terms specific to bridges in the 1929 Order." Colby responds that Green Grove and Colby were unaware of the 1929 agreement when they entered the 2010 agreement, and that as a result they could not have intended for the 2010 agreement to leave intact the bridge provision from the 1929 agreement.

¶43 "The primary goal in interpreting a contract is to determine and give effect to the parties' intention." *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶23, 233 Wis. 2d 314, 607 N.W.2d 276; *see also Estreen v. Bluhm*, 79 Wis. 2d 142, 152, 255 N.W.2d 473 (1977) ("[A] modified agreement should be construed in connection with the original contract in order to ascertain the intent of the parties."). The parties do not dispute that neither Green Grove nor Colby knew that the 1929 agreement existed until after Green Grove

discovered the agreement during litigation. For example, in Green Grove's reply brief supporting its first motion for summary judgment, which it submitted before it knew of the 1929 agreement, it argued that "[t]he [2010] [a]greement was a new agreement and it is not apparent that there was anything previously in writing." Consistent with this, the 2010 agreement does not mention or otherwise reflect an intent to modify an earlier agreement. And, as discussed above, the undisputed extrinsic evidence shows that, contrary to the 1929 agreement's bridge provision, the parties intended that Green Grove will be responsible for maintaining the bridge under the 2010 agreement. *See **Estreen***, 79 Wis. 2d at 153-54 (considering extrinsic evidence as to the parties' intent to determine whether a contract abrogated the terms of prior contracts).

¶44 Green Grove argues that there is evidence that Colby and Green Grove adhered to the 1929 agreement. Specifically, Green Grove argues that before the 2010 agreement, and consistent with the 1929 agreement, Green Grove was responsible for maintaining the southern portion of Meridian Avenue, while Colby was responsible for maintaining the northern portion. However, the undisputed evidence in the summary judgment materials shows that the parties were not, from at least 1985 until 2010, complying with the 1929 agreement as it related to the Towns' maintenance responsibilities for the bridge. In his affidavit, Colby's town board chairperson avers that before 2010, Colby maintained and repaired the bridge at its own expense, as part of the stretch of Meridian Avenue for which it was responsible. Similarly, in response to an interrogatory from Green Grove asking for a description of Colby's maintenance of Meridian Avenue prior to the 2010 agreement, Colby's town board chairperson stated that Colby's maintenance included "work to the bridge." That Colby, prior to 2010 and going back at least as far as 1985, maintained and repaired the bridge at its own expense

22

is undisputed, and it is inconsistent with the 1929 agreement as it relates to bridges.

¶45    Green Grove also argues that the 1929 agreement's bridge provision is still in effect because the 2010 agreement's "silence as to bridges is ambiguous and not unequivocal." As support, Green Grove cites *Carnes Co. v. Stone Creek Mechanical, Inc.*, 412 F.3d 845, 853 (7th Cir. 2005), which states that "[t]he acts relied upon to modify a prior contract must be unequivocal" and not ambiguous. However, as apparent from the quoted language, this case law discusses what is required to show an implied modification of an agreement through the parties' conduct, and thus does not support Green Grove's argument.

¶46    For these reasons, we conclude, based on the undisputed evidence, that when the parties entered the 2010 agreement, they did not do so intending to leave intact the 1929 agreement's bridge provision. As explained above, the undisputed extrinsic evidence shows that the parties intended for Green Grove to assume responsibility for maintenance of the bridge under the 2010 agreement.[13]

---

[13] Green Grove makes a number of additional arguments, all of which we reject. First, Green Grove points to maintenance agreements between Green Grove and other neighboring towns, which Green Grove argues are similar to the 1929 agreement. However, Green Grove does not explain the circumstances or the legal significance of these other agreements, and we thus do not consider them. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

Green Grove also argues that it is "entitled to its reasonable expenses incurred in proving the issue of the 1929 Order" pursuant to WIS. STAT. § 804.12(3), apparently asking that we make such an award. However, § 804.12(3) does not support making such an award on appeal, and Green Grove does not otherwise cite any authority to support this argument. On that basis, we need not consider it. *See Pettit*, 171 Wis. 2d 627, 646 (we need not consider arguments that are undeveloped and unsupported by legal authority).

Green Grove further argues that Colby submitted improperly pled facts on summary judgment. Specifically, Green Grove points to averments in an affidavit from Colby's chairperson that he knew when the Towns were created from "review[ing] Colby's historical

(continued)

23

## CONCLUSION

¶47 For the reasons stated, we affirm the circuit court's order granting summary judgment in favor of Colby.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

---

records as well as the history of the townships in Clark County." Green Grove argues that Colby violated WIS. STAT. § 802.08(3) because the records relied on were not attached to the affidavit and had not already been shared in discovery, and that as a result we should disregard those averments in the affidavit relating to when the Towns were created. However, Green Grove does not explain why these averments are consequential, and even if we assume that Green Grove is correct and we disregard them, our analysis remains unchanged.